**UNITED STATES of America**

v.

**Victor Manuel GERENA, et al.**

**Crim. No. H–85–50 (TEC).**

United States District Court,
D. Connecticut.

Nov. 22, 1988.

On Motion for Reconsideration
Jan. 12, 1989.

---

Albert S. Dabrowski, John A. Danaher, III, Asst. U.S. Attys., for U.S.

Ralph G. Elliot, Hartford, Conn., for intervenor Hartford Courant Co.

Diane Polan, New Haven, Conn., for Elias Castro Ramos.

Margaret P. Levy, Hartford, Conn., for Angel Diaz Ruiz.

John Williams, New Haven, Conn., for Hilton Fernandez–Diamante.

Richard Reeve, Asst. Federal Public Defender, for Isaac Camacho–Negron.

## RULING ON PENDING MOTIONS

DALY, Chief Judge.

The Hartford Courant Company ("Hartford Courant") has filed a motion to intervene in the above-captioned criminal matter and a motion for access to court files. Specifically, the Hartford Courant seeks access to (1) documents relating to the payments made to the defendants pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, (2) summaries made by law enforcement personnel while monitoring intercepted conversations that were recorded on those tapes which the Court has ruled should not be suppressed, and (3) all documents previously ordered by the Court to be sealed pending its decision on motions to suppress tape-recorded evidence. These two motions were transferred by the Honorable T. Emmet Clarie, the presiding judge in the case, for resolution. The motion to intervene is hereby GRANTED. The instant ruling shall address only that portion of the motion for access to court files that seeks documents pertaining to payments under the CJA.

## DISCUSSION

The public has a right of access to court documents. That right is both recognized by the common law and protected by the first amendment. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978); *United States v. Smith*, 776 F.2d 1104, 1109–10 (3d Cir.1985); *Associated*

*Press v. United States District Court,* 705 F.2d 1143, 1145 (9th Cir.1983). The public's right of access has as its source the open nature of our judicial system and the democratic structure of our government. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed. 2d 248 (1982); *CBS, Inc. v. United States District Court,* 765 F.2d 823, 825 (9th Cir. 1985). In particular, a fundamental characteristic of the criminal trial in our system of justice is that it is conducted in public, both as means of ensuring the interest of the defendant in receiving a fair trial and of permitting the public access to information critical to an educated body politic in a democratic society. However, openness and the concomitant public access to criminal proceedings are not limited to the trial. Rather, the public's right of access is also extended to pretrial proceedings. *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 13, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) (*"Press-Enterprise II"*). And it includes access to court documents filed in connection with a criminal matter. *Matter of the New York Times,* 828 F.2d 110, 114 (2d Cir.1987) (*"New York Times I"*); *Associated Press,* 705 F.2d at 1145.

The right of access to documents is nevertheless not an absolute one. Values other than openness and the free flow of information also inhere in our system of justice, including the preservation of the defendant's right to a fair trial and the protection of the privacy of others. *New York Times I,* 828 F.2d at 114. Occasionally, the public's right of access must give way to these other values. Therefore, a court must balance the public's right of access against these competing interests and must consider the injury to those interests should access be permitted. The standard against which this balancing of interests is conducted permits documents to be sealed only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Press-Enterprise II,* 478 U.S. at 9–10, 106 S.Ct. at 2741 (quoting *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984)

(*"Press-Enterprise I"*)); *accord Matter of New York Times,* 834 F.2d 1152, 1154 (2d Cir.1987) (*"New York Times II"*); *New York Times I,* 828 F.2d at 116.

■ Defendants herein suggest that their right to a fair trial would be infringed if payments under the CJA are disclosed to the Hartford Courant. First, defendants maintain that disclosure of the CJA payments, absent a similar disclosure of the amount of money that has been spent by the Government on the prosecution of this case, would be prejudicial. They note, however, that they would be willing to voluntarily disclose the CJA payments they have received if a similar disclosure was made by the Government. The Hartford Courant is in fact seeking, pursuant to the Freedom of Information Act ("FOIA"), such a disclosure by the prosecution. Whether or not the Hartford Courant is successful in the administrative proceedings under the FOIA, however, is largely irrelevant to the propriety of disclosing the CJA payments made to defendants. The disclosure of the costs to the taxpayers of the defense, absent a disclosure of the costs of the prosecution, will not significantly impair the defendants' right to a fair trial. Although the Court is well aware that this case has achieved substantial notoriety and has and will continue to receive significant media coverage, the announcement of the amount of money that has been spent on the defense will not result in such public outcry and bias as to prevent defendants from receiving a fair trial. Furthermore, any possible prejudice can be readily corrected through far less restrictive measures, such as cautionary instructions to the jury.

Second, defendants contend that disclosure of the CJA payments would result in a wholesale disclosure of their trial strategy that, but for their indigency, would never be made available to the public or the Government. The Court notes, however, that the Hartford Courant's request is actually quite narrow with regard to the CJA documents. Specifically, it seeks "[a]ll documents in this case disclosing the amount of money paid by the United

States" for the defendants' attorneys and other expenses incurred in the defense. *Motion of the Hartford Courant Company for Access to Court Files* at 1. This would include, in the Court's assessment, only the CJA "Authorization and Voucher for Expert and Other Services" forms and "Appointment of and Authority to Pay Court Appointed Counsel" forms approved by the Court. The request, as phrased in the Hartford Courant's moving papers, excludes the substantial supporting documentation filed by defendants that specifies what the time and expenses claimed were for and that would, if revealed, provide the Government with details about the preparation of the defense that it otherwise would not have available to it.

After review of the papers submitted pertaining to the motion for access and of the applications for CJA payments filed and approved to date, the Court concludes that disclosure of the CJA forms, which include only brief statements as to the basis for the claim for services or expenses and the amounts claimed and approved, will not reveal any significant information about defendants' trial strategy or preparation. Moreover, any minimal burden on the defendants' ability to proceed with their defense and to ensure the integrity thereof that might result from disclosure of these documents is far outweighed by the public's first amendment right of access to these documents.

Accordingly, with regard to the CJA documents, the motion of the Hartford Courant for access to court files is hereby GRANTED such that the Clerk of the Court shall make available for review copies of the Authorization and Voucher for Expert and Other Services forms and Appointment of and Authority to Pay Court Appointed Counsel forms that have been approved by the Court. In addition, the Court hereby ORDERS that copies of such documents shall be made available on a continuing basis as such documents are hereafter filed after review by this Court. Finally, the Court further ORDERS that the effect of this ruling shall be stayed for a period of ten days hereof, during which time the parties may file motions, if any, pertaining to this ruling.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION

On November 22, 1988, in response to the motion of intervenor Hartford Courant Company (the "Hartford Courant"), the court ordered that the Clerk of the Court would make available for review copies of the forms entitled "Authorization and Voucher for Expert and Other Services" and "Appointment of and Authority to Pay Court Appointed Counsel" (the "CJA forms") that had been approved by the Court. In addition, the Court stayed the effect of the ruling in order to afford the parties ten days from the time of that ruling to file any motions pertaining to that ruling. Defendants have filed a motion for reconsideration, and the Court has continued the stay of its ruling pending the disposition of that motion. Defendants alternatively request that the Court stay the effect of the ruling until the completion of all proceedings against all defendants, redact the CJA forms, or stay the ruling to permit the defendants to appeal the ruling.

### DISCUSSION

█ In requesting that the Court reconsider its ruling, defendants contend that the Court failed to address the equal protection claim that "lies at the heart of defendants' argument." *Defendants' Motion for Reconsideration*, at 2. If the Court's original ruling appeared to give short shrift to defendants' equal protection argument, it was not because the Court failed to consider the issue. Quite the contrary, the Court specifically recognized that, but for defendants' indigence, the question of the Hartford Courant's right of access to the CJA forms would not be before this Court. However, defendants' claim that because of their indigency they are being treated differently than would a defendant who could afford private counsel does not, absent some greater showing of prejudice, overcome the public's right of access to court documents and its interest

in knowing how its tax monies are being spent in a matter of public importance.

Defendants also press on reconsideration that permitting access to the CJA forms will intrude unfairly upon the attorney-client relationship by exposing information that would otherwise remain undisclosed. The method of permitting indigent defendants to submit CJA applications *ex parte*, defendants submit, is designed to ensure the inviolability of the attorney-client privilege and to protect defense preparation from premature disclosure. In particular, defendants claim that their right to a fair trial will be impaired because disclosure will reveal basic information about the nature of their trial strategy, including the number of hours expended by counsel and their experts, the time periods when particular work was done, and the identities of persons performing such work.

The Court remains unpersuaded by defendants' contentions that disclosure of the CJA forms will prevent them from receiving a fair trial. Defendants have failed to demonstrate beyond bald allegations that the prosecution will discover their defense preparation and strategy. The Court has reviewed the CJA forms, and they provide only extremely limited information about the amount of time spent and the type of work done.[1] Although the Court recognizes that permitting access to the CJA forms is unusual, permitting this limited information to be open to public review will not substantially impede their right to a fair trial. This prosecution has already received significant public notoriety, and Judge Clarie has taken various prudent measures, including a careful voir dire of the jurors, to limit any prejudicial impact resulting therefrom on the proceedings. Any further prejudice to the defendants from the release of the CJA forms can similarly be avoided through such measures.

---

1. For example, defendants submitted under seal as an exhibit in support of the motion for reconsideration a CJA form for what appears to have been certain computer services. The document includes a terse description of the services rendered, identifies who provided the services and when they were provided, and states the amount

Accordingly, the motion for reconsideration is hereby DENIED and the Court's original ruling of November 22, 1988 is reaffirmed. The effect of that ruling shall be stayed, on defendants' request and absent objection, for ten days hereof, in order to afford the parties an opportunity to file a notice of appeal herefrom.

SO ORDERED.

of the expenses claimed. The Court can discern nothing in that exhibit, or in any of the other CJA forms reviewed by the Court, that would impair the defendants' right to a fair trial if the documents are made available for public review.