**UNITED STATES of America, Appellee,**

v.

**Carlos Ayes SUAREZ, Antonio Camacho Negron, Roberto Jose Maldonado Rivera, Norman Ramirez Talavera, Juan Enrique Segarra Palmer and Angel Diaz–Ruiz, Defendants–Appellants,**

**The Hartford Courant Company ("Hartford Courant"), Intervenor–Appellee.**

**No. 1230, Docket 89–1041.**

United States Court of Appeals, Second Circuit.

Argued June 8, 1989.

Decided July 7, 1989.

Margaret P. Levy, Hartford, Conn., for defendant-appellant Diaz–Ruiz (Juan Ramon Acevedo, Hartford, Conn., of counsel), for defendant-appellant Ramirez Talavera.

Ralph G. Elliot, Hartford, Conn. (Tyler Cooper & Alcorn, of counsel), for Intervenor–Appellee.

Before LUMBARD, FEINBERG and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

Appellants, six of 19 individuals indicted in connection with an armed robbery, appeal from a ruling of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, J., making available for public scrutiny copies of forms used under the Criminal Justice Act, 18 U.S.C. § 3006A (the CJA), approving payments for court-appointed counsel and for experts and other services. Appellants claim that release now of the information in the forms infringes upon their right to a fair trial. For reasons given below, we affirm.

### Background

This appeal grows out of the indictment of appellants and their co-defendants in August 1985 for crimes in connection with

the armed robbery of $7.6 million from a Wells Fargo depot in West Hartford, Connecticut in September 1983. Various aspects of the criminal proceeding have been before us. See, e.g., *United States v. Ojeda Rios*, 875 F.2d 17 (2d Cir.1989); *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir.1986); *United States v. Melendez–Carrion*, 790 F.2d 984 (2d Cir.), cert. dismissed, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). Trial of five of the 19 defendants began in September 1988.

Shortly after commencement of the trial, the Hartford Courant Company (the Courant), a widely-circulated Connecticut newspaper, simultaneously moved to intervene in the case and for access to court files. Specifically, the Courant requested access to the following: (1) documents relating to payments made on behalf of defendants pursuant to the CJA; (2) summaries by law enforcement personnel of tape-recorded conversations; and (3) all documents previously sealed pending decision on a prior motion to suppress tape-recorded evidence. Judge T. Emmet Clarie, the trial judge for these cases, transferred the motions to then-Chief Judge Daly for resolution.

In November 1988, Judge Daly granted the Courant's motion to intervene and granted in part its motion for access to court documents. In a careful opinion, the district court addressed "only that portion of the motion for access to court files that seeks documents pertaining to payments under the CJA." *United States v. Gerena*, 703 F.Supp. 211, 212 (D.Conn.1988). Up to that point, these documents had been submitted and kept under seal since the beginning of the litigation in 1985. The court did not address the two other requests for access, which apparently are still pending. The court held that "the Clerk of the Court shall make available for review copies of the Authorization and Voucher for Expert and Other Services forms and Appointment of and Authority to Pay Court Appointed Counsel forms that have been approved by the Court" (the CJA forms). *Id.* at 214.

In December 1988, counsel for Angel Diaz–Ruiz, purportedly on behalf of all six appellants, moved the district court to re-consider its November ruling. Appellants requested in the alternative that the court stay the effect of its ruling until the completion of all proceedings against all defendants, redact the CJA forms, or stay the ruling to permit the defendants to appeal. The court denied the motion for reconsideration and reaffirmed its November ruling, but granted a limited stay of its order. *Id.* at 214–15. Apparently, however, the CJA forms were not released thereafter.

In March 1989, the clerk's office of the district court informed appellants that it intended to release the CJA forms relating to the five defendants then on trial "as soon as the jury returns a verdict." Shortly thereafter, appellants moved in this court to stay the release of any information relating to expenses incurred by any of the indigent defendants in the preparation of their defense in the underlying criminal proceeding. The jury returned its verdict in the trial on April 10, 1989. A panel of this court granted the stay on May 3, 1989 until argument of the appeal. At oral argument, we continued the stay until disposition of the appeal.

### Discussion

#### A. Jurisdiction

 Although the Courant does not contest appealability, we cannot ignore the issue of appellate jurisdiction. Appellants claim that they may appeal from Judge Daly's order pursuant to the "collateral order" doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In a similar situation, we stated that "*Cohen* very likely applies," *In re National Broadcasting Co.* (*United States v. Myers*), 635 F.2d 945, 949 n. 2 (2d Cir.1980), and then, a few years later, squarely held that it did. *In re The Herald Co.*, 734 F.2d 93, 96 (2d Cir.1984). Certainly, the district court's decision to release the CJA forms constitutes a final decision as to the Courant, an intervening party, with respect to obtaining access to the CJA forms. In addition, we have stated that an order is appealable when it adjudicates what is essentially a dispute between a news agency as applicant and

the clerk of the district court as custodian of the documents to which the news agency seeks access. *In re National Broadcasting Co.*, 635 F.2d at 949 n. 2. We reasoned that since the dispute could have been treated by the district court as a new civil case and given a number separate from the criminal litigation, the order is appealable. *Id.*

### B. The Proper Appellants

■ The Courant claims that the only appellant properly before us is Angel Diaz–Ruiz since the other five appellants, with the exception of Maldonado Rivera who is pro se, are represented by their own counsel. Therefore, according to the Courant, the notice of appeal filed by Ms. Levy, counsel for Diaz–Ruiz, on behalf of the other five appellants, is defective because it was not filed by their own attorneys. Rule 3(b) of the Federal Rules of Appellate Procedure allows a joint notice of appeal, so the issue thus posed is whether Ms. Levy had the authority to file it. Counsel for one of the other appellants and the pro se appellant have confirmed in letters to the court that Ms. Levy did have such authority, and we received similar assurances from Ms. Levy at oral argument. Since there is no doubt that Ms. Levy could properly file a notice of appeal for Diaz–Ruiz, and the issues posed on his appeal have general application, we do not regard it as fruitful to explore the issue further.

### C. Mootness

■ The Courant argues that even if all appellants are properly before us, we should dismiss the appeal as moot with respect to the five who have been tried (four were convicted and the other was acquitted). The Courant claims that disclosure cannot possibly prejudice these defendants' fair trial rights since their trials have ended. At oral argument, appellants argued that disclosure might still prejudice the fair trial rights of the four convicted defendants by nullifying the possibility of a fair retrial in the event of a successful appeal on the merits. Here, too, we believe that the appeal of Diaz–Ruiz, which is concededly before us properly, raises all the issues discussed below, so that the matter need not be explored further. For convenience, we will refer throughout to all appellants as the parties who appeal.

### D. The Merits

■ Judge Daly's order grants the Courant access to various CJA forms on which judicial officers have approved payments to attorneys or to others who provided expert or other services to appellants, such as investigators, interpreters and computer experts. The order also makes such documents available on a continuing basis in the future. Documents of this type are used when a criminal defendant cannot afford to retain his own counsel or obtain the services of various experts. In that situation, a federal court pursuant to the CJA will appoint counsel and authorize the hiring of experts. The CJA fixes hourly rates of compensation and maximum payments; the latter may be exceeded if approved by the trial judge and the chief judge of the circuit.

Attached hereto as Appendices A and B are samples of blank CJA forms currently in use. Appendix A is the form used for the appointment and payment of court-appointed counsel and Appendix B is the analagous form for expert and other services. Both forms are supplied to counsel by court personnel, are filled out by the claimant, and are submitted to judicial officers for approval and eventually to the Administrative Office of the United States Courts (the Administrative Office) for processing and actual payment. The Regulations governing administration of the CJA also allow interim payments under appropriate circumstances, see VII Guide to Judiciary Policies and Procedures: Appointment and Payment of Counsel ¶ 2.30 at 2–36 (1988); VII Guide to Judiciary Policies and Procedures: Investigative, Expert or Other Services ¶ 3.06 at 3–5 (1988), and payments in this case have been made on that basis because the proceedings are so lengthy and complicated. The dispute before us centers around the amounts approved for payment, the identity of those receiving the payments, and the nature of the services fur-

nished. We construe Judge Daly's order to release only the CJA forms similar to appendices A and B, which provide a summary cover-sheet listing the amounts sought and approved for payment, without the detailed back-up material attached thereto.

Appellants claim that the public's First Amendment qualified right of access to pre-trial and trial proceedings has never been extended to cover documents disclosing the information at issue here. They argue that disclosure should be stayed until conclusion of all criminal proceedings against all defendants. Disclosure now, say appellants, would deny them a fair trial by violating their Sixth Amendment right to effective assistance of counsel, their attorney-client privilege and the work-product protection to which they are entitled.

The Courant argues that the criminal proceedings that gave rise to these appeals have received extraordinary public attention, that because so many of the defendants are indigent the district court has had to approve payment of vast sums of money to their attorneys and to others supplying necessary services, that the public, by virtue of the First Amendment, has a right to know how much has been paid out of public funds and for what services and that disclosure will not interfere with any of appellants' rights.

Turning to these arguments, it is true that no reported decision dealing with the precise issue before us has been cited to us, and we have found none. But that is hardly determinative. In many—if not most—cases, payment under the CJA is not made until the criminal trial is over. Thus, the issue has apparently never arisen before in the Connecticut District Court in Hartford because in no prior case have interim vouchers been submitted and paid. Moreover, in most cases, the press is apparently not interested in who is being paid how much and for what services on behalf of a criminal defendant, even if the payment does come from public funds. But certainly, there is an obvious legitimate public interest in how taxpayers' money is being spent, particularly when the amount is large. The obvious mechanism for obtaining this information that springs to mind is the Freedom of Information Act (FOIA), 5 U.S.C. § 552, which provides a statutory procedure for disclosure of information along with proper protection of legitimate government interests in nondisclosure. However, that Act applies to agency action but not to the judicial branch, which is the custodian of records of payments under the CJA.

More fundamentally, the Courant argues that the public—and, therefore a newspaper as the public's surrogate—has a First Amendment right to the information sought. There have been a number of recent decisions—some of them in this court—dealing with the public's right of access to courtroom proceedings in criminal cases and to papers filed in connection with them. See, e.g., *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*); *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *In re The New York Times Co.*, 834 F.2d 1152 (2d Cir.1987) (*New York Times II*); *In re The New York Times Co.*, 828 F.2d 110 (2d Cir.1987) (*New York Times I*), cert. denied, —— U.S. ——, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *National Broadcasting Co. v. United States Dept. of Justice*, 735 F.2d 51 (2d Cir.1984).

■ None of these decisions involves access to CJA forms, but we believe that the principles they set forth apply to these documents as well. There is a presumption of public access to a criminal trial, *Richmond Newspapers*, 448 U.S. at 580–81, 100 S.Ct. at 2829, and to a pretrial proceeding in a criminal case. See *Press–Enterprise II*, 478 U.S. at 9, 13–14, 106 S.Ct. at 2740–41, 2742–43; *In re The Herald Co.*, 734 F.2d at 96–99. This presumption also applies to documents filed in connection with criminal proceedings. *New York Times I*, 828 F.2d at 114. The forms here were submitted to the federal district judge in charge of the criminal case (and, in some instances, to the chief judge of the circuit),

and the submission was obviously in connection with the criminal proceeding.

The Courant points out that when applications for fees and costs are made in other types of litigation, after a federal judge has acted upon such requests, the results are available to the public. See, e.g., *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (legal fees under 42 U.S.C. § 1988); *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251 (2d Cir.1988) (legal fees for attempted takeover); *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930 (2d Cir.1987) (costs under 5 U.S.C. § 552(a)(4)(E)). These are civil cases, and of course there are distinguishing factors, but the implication of the argument is that such information, a fortiori, should be available to the public in connection with a criminal proceeding.

It is true that there is no long "tradition of accessibility" to CJA forms. See *Press–Enterprise II*, 478 U.S. at 10, 106 S.Ct. at 2741. However, that is because the CJA itself is, in terms of "tradition," a fairly recent development, having been enacted in 1964, and the cases upon which the Courant relies were all decided in the last decade or so. Indeed, there have been some opinions in this circuit concerning procedural aspects of the CJA which have fully disclosed the amounts sought and paid. *United States v. Melendez–Carrion*, 811 F.2d 780 (2d Cir.1987); *United States v. Melendez–Carrion*, 804 F.2d 7 (2d Cir. 1986). The lack of "tradition" with respect to the CJA forms does not detract from the public's strong interest in how its funds are being spent in the administration of criminal justice and what amounts of public funds are paid to particular private attorneys or firms. Because there is no persuasive reason to ignore the presumption of openness that applies to documents submitted in connection with a criminal proceeding, we conclude that the public has a qualified First Amendment right of access to the CJA forms after payment has been approved.

■ But that is not the end of the inquiry. The right of access, as we have just noted, is a qualified one; it is not absolute.

Under the cases referred to above, the right of access in this case must be weighed against appellants' claims that their rights to effective assistance of counsel, the attorney-client privilege and work-product protection will be violated by Judge Daly's order. We have had some difficulty in assessing these claims because of the sparse record before us. At oral argument, we requested, and eventually obtained, a small representative sample of the several hundred (we are told) CJA forms that are presumably affected by the order. We have received that sample, and it is difficult to see how appellants' rights would be infringed by disclosure.

■ First, it is apparent from an examination of Appendices A and B that much of the information disclosed is already part of the public record; e.g., identification of the person represented in the criminal proceeding and the attorney representing that defendant who has presumably filed a notice of appearance, the nature of the charge, etc. Next, the Courant's request for CJA information is narrow. The Courant disavows any entitlement to the work product, trial strategy or privileged communications of defendants or their counsel. Its counsel emphasized at oral argument that it seeks only "the barebones data" of who was paid, how much and for what services, i.e., only the cover-sheets exemplified by Appendices A and B with none of the detail or back-up information, such as attached timesheets. We do not believe that disclosure of the amounts paid to attorneys and experts on appellants' behalf, or the identity of those who received them, impinges on appellants' rights. It is theoretically possible that in describing the services rendered, appellants' attorneys might, for example, by indicating a subject of research, disclose a trial strategy not already revealed in the trials that have just ended. But none of the samples submitted to us does that, and the Courant made clear at argument that a blanket description, such as "for legal services," would suffice.

It is also theoretically possible that identification of an expert who has been consulted but has not thus far testified in the

completed trials could be harmful on the same theory, but nothing submitted to us bears that out. In a case where there have been "hundreds of audiocassettes of wiretaps, scores of videocassettes of surveillance, and thousands of pages of documents seized in more than 45 searches," *United States v. Gonzales Claudio*, 806 F.2d at 341, and a huge volume of evidence that had to be translated, analyzed and organized, *id.* at 341–42, it is hardly a disclosure of trial strategy that defendants had to hire translators, computer experts and tape analysts. It is conceivable, though hardly likely at this stage of these complex proceedings, that the identity of some of those hired is still unknown by the prosecutors. In such a case, we would assume appellants would seek special protection in connection with a particular CJA form and ask for redaction on that ground. But on the record before us, we see no reason to interfere with Judge Daly's order.

■ Appellants argue that they are being denied equal protection because if they were not indigents, they would not be required to disclose information under the CJA, and their expenses in defending themselves would not become public knowledge. That is true, but we do not see why it is dispositive. If appellants had retained privately paid attorneys, the public would have no interest similar to the interest it now has in how public funds are spent. The latter is the justification for the disclosure and neutralizes the equal protection argument. In the same vein, appellants stated at oral argument that they would be willing to disclose the expense of their defense if the government were required to disclose the expense of prosecution. (While not dispositive, it is worth noting that the Courant has been simultaneously attempting to use the FOIA to obtain data on the government's expenditures in these proceedings, and has published whatever information on this subject that it has obtained.) The argument ignores the Courant's right of access to orders of a judicial officer, in connection with a criminal proceeding, that approve payments of public funds to private attorneys or firms, regardless of whether the government releases information on the expenses of the prosecution.

Appellants also point to 18 U.S.C. § 3006A(e)(1), which provides that "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application." (Curiously, the section contains no such restriction on applications for counsel fees). The legislative history of this section clearly indicates that it was intended to "protect[ ] the rights of a defendant by providing that the proceeding authorized by [the] subsection ... be an ex parte proceeding. This prevents the possibility that an open hearing may cause a defendant to reveal his defense." H.Rep. No. 864, 88th Cong., 1st Sess. 2 (1963), reprinted in 1964 U.S.Code Cong. & Admin.News 2990, 2990.

This provision does not suggest that the records the Courant seeks should be inaccessible to the public after the services sought by defendants are authorized, the services are rendered, and compensation for the services is sought and approved. It makes good sense to deprive the adversary prosecutor of a voice in the court's determination at the outset of a defendant's needs in preparing his defense. But that is a far cry from depriving the public, after those needs are met, of the information sought here. This view is supported by the Guidelines for the Administration of the CJA issued by the Administrative Office with regard to "requests for release to the public of records and information pertaining to" CJA activities. The Guidelines provide that:

> Generally, such information which is not otherwise routinely available to the public should be made available unless it is classified pursuant to an executive order or its release might adversely affect the national defense or foreign policy interests of the United States, unduly intrude upon the privacy of attorneys or defendants or compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship

or privileged information provided by the defendant or other sources (see 5 U.S.C. 552(b)).

Upon request, or upon the court's own motion, documents pertaining to Criminal Justice Act activities maintained in the clerk's open files, which are generally available to the public, may be judicially placed under seal or otherwise safeguarded until after all judicial proceedings in the case are completed and for such time thereafter as the court deems appropriate. Interested parties should be notified of any modification of such an order.

VII Guide to Judiciary Policies and Procedures: Miscellaneous Procedures ¶ 5.01 at 5–1 (1984). We interpret this guideline to mean that the information sought here "[g]enerally ... should be made available" unless appellants' legitimate interests would be violated, the very analysis we have already decided is applicable.

Appellants also suggest that the effect of disclosure will be to inflame the body politic against them, thus jeopardizing their right to a fair trial. The argument is to some extent undercut by appellants' apparent willingness to disclose the information if the cost of prosecution is also revealed and by what the Courant alleges is appellants' own selective disclosure of sums paid to their attorneys or experts. More to the point, in a case as controversial and well-publicized as this one, we doubt that information as to the publicly-funded costs of defense will substantially further affect public opinion. The failure of many of appellants' co-defendants to appeal from Judge Daly's order may indicate a similar appraisal. And, if the trial court is faced with a problem in obtaining an unbiased jury, the available options are well known. Appellants also claim that the disclosure ordered by Judge Daly will chill the "willingness" of defendants "to apply for funds necessary for the preparation and presentation of a defense." Judge Daly apparently doubted this conclusion, and so do we.

Finally, appellants point to the concern for privacy exhibited by this court in *New York Times I* and *II,* and ask us to apply the same standard here. However, as the opinions in those cases make clear, the information to be disclosed there was obtained by wiretapping under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., and the protection of the privacy of those whose conversations were overheard "was an overriding congressional concern." *New York Times I,* 828 F.2d at 115. The considerations here are completely different, as discussed above.

We have already indicated that all of the CJA forms are not part of the record before us. It may be, as we have pointed out, that some modest redaction before disclosure of a particular CJA form will be justified in view of the narrow scope of the Courant's request and the principles set forth above. Appellants are free to ask Judge Daly, who has already examined the CJA forms, *United States v. Gerena,* 703 F.Supp. at 214, to do so again, but appellants may make such a good faith request only with respect to individual forms, not on a blanket basis, if there appears to be a reasonable need to do so in light of the discussion above.

The judgment of the district court is affirmed.

# APPENDIX A

**CJA 20 (Rev. 8/87)** APPOINTMENT OF AND AUTHORITY TO PAY COURT APPOINTED COUNSEL

| 1. JURISDICTION<br>1 ☐ MAG. 2 ☐ DIST. 3 ☐ APPEALS 4 ☐ OTHER _____ | 2. MAG. DOCKET NO. | 3. DIST. CT. DOCKET NO. | VOUCHER NO.<br>0036593 |
|---|---|---|---|

| 4. APPEALS DOCKET NO. | 5. FOR (DISTRICT/CIRCUIT) | 6. LOC. CODE | 7. CHARGE/OFFENSE (U.S. or other code citation) | 7A. CASE CODE |
|---|---|---|---|---|

| 8. IN THE CASE OF VS | 9. PERSON REPRESENTED (FULL NAME) | 9A. NO. REPRES. |
|---|---|---|

| 10. PERSON REPRESENTED (STATUS)<br>1 ☐ DEFENDANT—ADULT 3 ☐ APPELLANT 5 ☐ OTHER _____<br>2 ☐ DEFENDANT—JUVENILE 4 ☐ APPELLEE | 11. PROCEEDINGS (Describe briefly) |
|---|---|

**12. PAYMENT CATEGORY**
A ☐ FELONY C ☐ PETTY OFFENSE E ☐ OTHER
B ☐ MISDEMEANOR D ☐ APPEAL

**13. COURT ORDER**
O ☐ Appointing Counsel F ☐ Subs. for FD P ☐ Subs. for Panel Atty. _____
C ☐ Co-Counsel R ☐ Subs. for Retained Atty. Appt. Date _____ Voucher No. _____

Name of prior panel attorney

Because the above-named "person represented" has testified under oath or has otherwise satisfied this court that he or she (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require, the attorney whose name appears in item 14 is appointed to represent this person in this case.

▶ _____
Sig. of Presiding Judicial Officer or By Order of Court (Clerk/Deputy)

▶ _____ Date of Order ▶ _____ Nunc Pro Tunc Date

| 14. NAME OF ATTORNEY/PAYEE AND MAILING ADDRESS |
|---|

| 15. TELEPHONE NO. | 16. SOC. SEC. NO. |
|---|---|

## CLAIM FOR SERVICES OR EXPENSES

| | SERVICE | HOURS | DATES | |
|---|---|---|---|---|
| 17. IN COURT | a. Arraignment and/or Plea | | | Multiply rate per hour times total hours to obtain "In Court" compensation. Enter total below. |
| | b. Bail and Detention Hearings | | | |
| | c. Motions Hearings | | | |
| | d. Trial | | | |
| | e. Sentence Hearings | | | |
| | f. Revocation Hearings | | | |
| | g. Appeals Court | | | 17A. TOTAL IN COURT COMP. $ |
| | h. Other (Specify on additional sheets) | | | |
| | (Rate per hour = ) TOTAL HOURS = | | | |
| 18. OUT OF COURT | a. Interviews and conferences | | | Multiply rate per hour times total hours. Enter total "out of court" compensation below. |
| | b. Obtaining and reviewing records | | | |
| | c. Legal research and brief writing | | | |
| | d. Travel time (Specify on additional sheets) | | | |
| | e. Investigative and other work (Specify on additional sheets) | | | 18A. TOTAL OUT OF COURT COMPENSATION $ |
| | (Rate per hour = ) TOTAL HOURS= | | | |

| 19. EXPENSES | TRAVEL, LODGING, MEALS ETC. | AMOUNT | OTHER EXPENSES | AMOUNT | 19A. TOTAL TRAVEL EXP. $ |
|---|---|---|---|---|---|
| | | | | | 19B. TOTAL OTHER EXP. $ |
| | | | | | 20. GRAND TOTAL CLAIMED $ |

**21. CERTIFICATION OF ATTORNEY/PAYEE FOR PERIOD** _____ TO _____

F ☐ Final Payment I ☐ Interim Payment No. _____

Has compensation and/or reimbursement for work in this case previously been applied for? ☐ YES ☐ NO
If yes, were you paid? ☐ YES ☐ NO If yes, by whom were you paid? _____ How much? _____ Has the person represented paid any money to you, or to your knowledge to anyone else, in connection with the matter for which you were appointed to provide representation? ☐ YES ☐ NO
If yes, give details on additional sheets.
I swear or affirm the truth or correctness of the above statements

▶ _____ SIGNATURE OF ATTORNEY/PAYEE ▶ _____ DATE

| APPROVED FOR PAYMENT | 22. IN COURT COMP. $ | 23. OUT OF COURT COMP. $ | 24. TRAVEL EXPENSE $ | 25. OTHER EXPENSES $ | 26. TOTAL AMT. APPROVED/CERT. $ |
|---|---|---|---|---|---|
| | 27. SIGNATURE OF PRESIDING JUDICIAL OFFICER | | | DATE | 27A. JUDGE/MAG. CODE |
| | 28. SIGNATURE OF CHIEF JUDGE, CT. OF APPEALS (OR DELEGATE) | | | DATE | 29. TOTAL AMT. APPROVED $ |

## APPENDIX B

CJA 21 (Rev. 8/87) **AUTHORIZATION AND VOUCHER FOR EXPERT AND OTHER SERVICES**

| 1. JURISDICTION 1 ☐ MAGISTRATE 2 ☐ DISTRICT 3 ☐ APPEALS 4 ☐ OTHER _____ | 2. MAG. DOCKET NO. | VOUCHER NO. 0023639 |
|---|---|---|

| 3. DISTRICT DOCKET NO. | 4. APPEALS DOCKET NO. | 5. FOR (DISTRICT/CIRCUIT) | 6. LOC. CODE | 7. CASE CODE |
|---|---|---|---|---|

| 7A. CHARGE/OFFENSE (U.S. or other code citation) | 8. IN THE CASE OF vs. |
|---|---|

| 9. PERSON REPRESENTED (FULL NAME) | 11. PROCEEDINGS FOR WHICH SERVICES ARE REQUESTED (DESCRIBE BRIEFLY) |
|---|---|

**10. PERSON REPRESENTED (STATUS)**
1 ☐ DEFENDANT — ADULT 3 ☐ APPELLANT 5 ☐ OTHER
2 ☐ DEFENDANT — JUVENILE 4 ☐ APPELLEE _____

| 12. TYPE OF SERVICES REQUESTED 9 ☐ CALR 1 ☐ INVESTIGATOR 5 ☐ POLYGRAPH 10 ☐ CHEMIST 2 ☐ INTERPRETER 6 ☐ DOCUMENTS 11 ☐ BALLISTICS 3 ☐ PSYCHOLOGIST 7 ☐ FINGERPRINT 12 ☐ OTHER 4 ☐ PSYCHIATRIST 8 ☐ ACCOUNTANT | 13. SERVICES TO BE PROVIDED BY (Name, organization, address, area code, telephone no.) |
|---|---|

**14. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES.** Use additional sheets if necessary. (If requesting psychiatrist or psychologist see instructions for item 14.)

**15. ATTORNEY'S STATEMENT**
As the attorney for the person represented who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request

☐ Authorization to obtain the service or
☐ Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act.
(Note: Prior authorization should be obtained for services in excess of $300.)

▶ _____ SIGNATURE OF ATTORNEY ▶ _____ DATE
TELEPHONE NO. _____
1 ☐ FPD 2 ☐ PANEL ATTORNEY 3 ☐ RETAINED ATTY. 4 ☐ PRO-SE

**16. ESTIMATED COMPENSATION** (Describe basis, i.e. hourly or daily rate or fixed fee)
$ _____

**17. COURT ORDER**
Financial eligibility of the person represented having been established to the court's satisfaction, the authorization requested in item 15 is hereby granted.

▶ _____ SIGNATURE OF PRESIDING JUDICIAL OFFICER ▶ _____ DATE

### CLAIM FOR SERVICE

| 18. ITEMIZATION OF SERVICES RENDERED AND EXPENSES INCURRED (Include dates and duration of services and basis of compensation claimed. Attach receipts for expenses incurred. Use additional sheets if necessary.) | A. TOTAL COMPENSATION $ B. TOTAL EXPENSES $ C. TOTAL AMOUNT CLAIMED $ |
|---|---|

**19. CLAIMANT'S CERTIFICATION FOR PERIOD _____ TO _____**
F ☐ FINAL PAYMENT I ☐ INTERIM PAYMENT NO. _____
I hereby certify that the above claim is correct and that I have NOT claimed or received payment from any other source for the services rendered and claimed on this voucher.

▶ _____ SIGNATURE OF CLAIMANT DATE

**20. CERTIFICATION OF ATTORNEY**
I hereby certify that these services were rendered.

▶ _____ ATTORNEY'S SIGNATURE DATE

### APPROVED FOR PAYMENT

**21(a).** Either the cost of these services does not exceed $300, or prior authorization was obtained.

▶ _____ SIGNATURE OF PRESIDING JUDICIAL OFFICER ▶ DATE ▶ JUDGE/MAG. CODE

**21(b).** Prior authorization was not obtained, but in the interest of justice the court finds that timely procurement of these necessary services could not await prior authorization, even though the cost exceeds $300.

▶ _____ SIGNATURE OF PRESIDING JUDICIAL OFFICER ▶ DATE ▶ JUDGE/MAG. CODE

**21(c).** Services procured in accordance with Federal public defender general budget authority.

▶ _____ SIGNATURE OF FEDERAL PUBLIC DEFENDER ▶ DATE

| 22. AMOUNT APPROVED/CERT. | |
|---|---|
| A. COMPENSATION $ | |
| B. EXPENSES $ | |
| C. TOTAL AMOUNT APPROVED/CERTIFIED $ | |

**23. Excess payment approved under 18 U.S.C. 3006A(e)(3)**

▶ _____ SIGNATURE OF CHIEF JUDGE, CT. OF APPEALS (OR DELEGATE) ▶ DATE

**24. TOTAL APPROVED**
$

| 25. NAME OF PAYEE | 26. PAYEE'S ADDRESS (Include city, state & zip code) |
|---|---|
| 27. PAYEE'S SOC. SEC. NO. OR EMPLOYER ID NO. | 28. ATTORNEY'S NAME AND ADDRESS (Include city, state, & zip code) |