**CITY OF HARTFORD**

v.

**David T. CHASE, et al.**

**Civ. No. H–89–223 (PCD).**

United States District Court,
D. Connecticut.

March 30, 1990.

Charles L. Howard, Shipman & Goodwin, Thomas R. Cox, Eunice S. Groark, Richard M. Cosgrove, Sr. Deputy Corp. Counsel, Hartford, Conn., for plaintiff.

Eric Watt Wiechmann, Cummings & Lockwood, Hartford, Conn., Jacob D. Zeldes, Stuart Bear, Paul Thomas, Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., Stanley D. Robinson (pro hac vice), Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

Ralph G. Elliot, Susan A. Quinn, Tyler, Cooper & Alcorn, Hartford, Conn., for Hartford Courant & W. Keveney.

## RULING ON MOTIONS TO INTERVENE and VACATE

DORSEY, District Judge.

This action was brought by the City of Hartford based on an agreement with defendants which the City asserted had been breached. The agreement arose from negotiations during which the City was informed of substantial financial data pertaining to defendants who did not wish such to become public knowledge.[1] At defendants' instance, the agreement provided broadly for confidentiality in and of the dealings among the parties. In fulfillment of the confidentiality obligation and to avoid the risk of being found in breach, the City accompanied the filing of the complaint herein with a motion to seal the record. As the motion arose from the agreement of the parties and presented a matter between them, the motion was granted. Subsequently, the parties reached an agreement resolving their differences. In memorializing same and concluding this lawsuit as between the parties, a further order sealing the record on file in court was requested. As previously found, as a matter among the parties and which was not the subject of dispute, an order sealing the file was entered. The settlement was not as likely to have been reached if it would have been reached at all, except for the confidentiality. Considerable expense to the parties, including particularly the City, as well as court time, was thus saved.

Now, the fourth estate, in the person of the Hartford Courant and one of its enterprising reporters, hereinafter "intervenors" seeks to intervene for the purpose of asserting rights under the Connecticut and United States Constitutions. They allege, in a soundly analyzed argument speckled with superfluous oratory, that absent intervention and the opportunity to vacate the sealing order and, in turn, disclose to their readers the contents of the court file, their rights to pursue their occupations are in jeopardy. They also assert that, absent success here, their rights to gather and disseminate news cannot otherwise be vindicated. Correctly, they note that the sealing orders were not the subject of a public hearing nor have the substantive contents of the court file been disclosed publicly.

*Motion to Intervene*

■ Intervenors assert no personal right or interest in the case at bar. Though they allude to rights and interests of the public and, in particular, the citizens of Hartford, intervenors claim only the right to gather and disseminate the news in order to enable the public to know the details of this case, the complaint, and the settlement, by the intervenors' conscientious surrogacy of the public. The motion to intervene does not present the ultimate issue, i.e., whether intervenors should have access to the sealed file. That can be resolved in consideration of their motion to vacate the ensealment order. The motion to intervene solely presents the question of the existence of any interest, which would require that the intervention be permitted. Intervenors have a sufficient interest to constitute standing, an amorphous concept which requires that they be related to the issue they propose to raise and it is of such quality as to present a justiciable issue. This question is not dependent on, nor is it determined by, the status or identification of the parties nor the nature of the dispute.

The intervenors have made an adequate showing. As their interest is at least colorably valid and intervention seems to be the only practical way of asserting it, the motion to intervene is granted.

*Motion to Vacate*

While intervenors wade into the fray focusing on the "right of access to court files," Brief at 6, there is a preliminary question of necessity. Assuming their right to the information, is it necessary that they obtain access to it through the court records? Is there an alternative

---

**1.** Substantial documents pertaining to that transaction are noted by the parties to have been made available to the public. *See* Memorandum of the Parties at 11–13.

means? Plaintiff is a municipality which is subject to Connecticut's laws concerning its records. Intervenors have alluded to a possible alternate route, referring to state law and whether a municipality can lawfully contract out from its distinct requirements. Brief at 29–31. However, intervenors have not analyzed the law of Connecticut in any detail, and the opposition does not rely on such availability. While an alternative means of obtaining the material would permit the court to honor whatever lawful and proper grounds are presented as a basis for a confidentiality order, the issue is not presented here in a determinative way, but the issue will be discussed below in another context.

■■■ Thus, what is presented is intervenors' broad claim of public access to court records against the parties' asserted right to confidentiality. Consideration of the issues starts with the principle, clearly established, that judicial records and documents, including not only such as are generated by the courts, but those filed with the courts, are generally subject to inspection and copying as a matter of public right. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *United States v. Gerena,* 703 F.Supp. 211, 212–13 (D.Conn.1988). The theory underlying that right is that of the checks and balances of the exercise of power by government. Power is an awesome force, indeed by definition it is a force. Properly exercised, its potential for enhancing the status of the community and of individual citizens is immeasurable. Yet, the exercise of power is not an institutional phenomenon. It is done by individuals, often in groups. The exercise of power is as vulnerable to evil as there are frailties in mankind. Power can be exercised with personal ambition, officiousness, arrogance, indifference, insensitivity, greed, bias, vindictiveness, and other similar characteristics, all identifiable in humans and all detrimental to the common good. In small communities, the exercise of power is readily realized and recognized in fact and by source. In larger communities, its exercise is not so apparent and those calling the shots are not so identifiable. Power hungry persons are pleased to ride the crest of favorable publicity, but the aberrational use of power is almost always in shadow, cloaked in secrecy when questions are not asked, and the threat of questioning is usually promptly squelched.

The courts are vulnerable to such deficiencies. The courts, as do all branches of government, derive their authority from the people and thus the people are entitled to know the uses made of the power they have granted. Secrecy is not only contrary to the reality of responsibility in those exercising authority to the community which grants it, but it is an anathema, a denial of that responsibility. The light of day exposes and inhibits impropriety in the exercise of power.

When parties come before the courts, as willing claimants seeking redress or unwilling targets of such claims, they play out a process by which their respective rights and obligations are adjudicated. Their dispute is personal. The adjudicative process, however, is a function of the law which is derived from the community's delegation to the courts and to the legislature of the power to establish and enforce the substance of the law.[2] That process is a matter of public concern as the enforcement of the law has a broader impact than just the decision in the dispute of particular parties. So also the community has a real concern as to the process by which the law is justly enforced. The public's concern is accommodated by the openness of the court's record. By access to the record, the public best ensures that the authority it has delegated to the courts and the substantive law enacted under authority delegated by the community are exercised and enforced consistent with the charge to the court implicit in the delegation of authority.

2. Although the parties' settlement did not involve adjudication, it was reached under the auspices of the court at least in the recording of their agreement with the court. Had the parties exalted confidentiality over the effect of the imprimatur of the court resulting from the recording here, they need not have recorded the settlement with the court.

Though the court record is thus, at first blush, open to the public, courts have protected individual interests, largely through protective orders, of such as trade secrets or proprietary information. Protection of a criminal defendant's right to a fair trial is deemed to serve a higher interest than that of free access to the court's records. *See Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 13–14, 106 S.Ct. 2735, 2742–43, 92 L.Ed.2d 1 (1986); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (both in the context of open proceedings). In serving this interest, the press has a unique role, recognized in the first amendment, of ensuring the public scrutiny which "enhances the quality and safeguards in the integrity of the factfinding process." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982). *See Saxbe v. Washington Post Co.,* 417 U.S. 843, 862–63, 94 S.Ct. 2811, 2821, 41 L.Ed.2d 514 (1974). The question here posed is whether the parties have shown interests which outweigh the presumed right of public access and thus warrant the sealing ordered herein.[3] *United States v. Suarez,* 880 F.2d 626, 631, 633 (2d Cir.1989) (no overriding right against access to Criminal Justice Act vouchers for attorney fees in rights to effective counsel or to a fair trial). Public access is often, however, a question "best left to the sound discretion of the trial court." *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312.

■ A countering concept is found to give rise to a claim for sealing a record

relied on by parties in reaching a settlement agreement. *Palmieri v. State of New York,* 779 F.2d 861 (2d Cir.1985).[4] There, private parties reached a settlement, relying on a sealing of the settlement agreement. The parties claimed that a consideration in their agreement was the sealing, on which they relied to defeat the interest of the state in investigating potential antitrust behavior. The purpose of the sealing order was to permit the parties, in their negotiations and agreement, to rely on the insulation of the record in the district court from the inquiry of the state. *Id.* at 863.[5] Two elements are raised. First is whether the sealing was improvident. The second is whether the presumption in favor of upholding the orders has been overcome. *Id.* at 865. The latter is a question of "extraordinary circumstance" or "compelling need." *Federal Deposit Ins. Corp.,* 677 F.2d at 232. *See Martindell v. International Telephone & Telegraph Corp.,* 594 F.2d 291, 296 (2d Cir.1979); *compare United States v. Davis,* 702 F.2d 418, 422 (2d Cir.1983).

■ A preliminary matter is whether judicial restraint is required to let the state resolve the matter. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The record reflects a request for the information under the state's Freedom of Information Act ("FOIA"), Conn.Gen. Stat. § 1–15, *et seq.,* but the prospect for resolution thereof is not reflected here. Absent progress in those proceedings, ap-

3. Intervenors have injected the claim of a right to a hearing, i.e., that the press (and equally the public) should be heard before public access is denied. The order entered was based solely on the parties' interests, claims and request. It was explicitly not adjudicative of the public right. As the hearing on the intervenors' motion complies with this claim, it need not be considered further. *See United States v. Haller,* 837 F.2d 84 (2d Cir.1988); *In re Application of the Herald Co.,* 734 F.2d 93 (2d Cir.1984).

4. The parties' agreement must be considered. It is not an ipse dixit. It creates no obligation to honor it nor can it erase the right of others, particularly the public and the news media.

5. The parties cite authority for the propriety of considering their reliance on court orders and

agreements of confidentiality in entering into and reaching settlement agreements. *In re Franklin Nat'l Bank Securities Litigation,* 92 F.R.D. 468, 472 (E.D.N.Y.1981), *aff'd sub nom. Federal Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230 (2d Cir.1982); *Tavoulareas v. Washington Post Co.,* 111 F.R.D. 653, 658–59 (D.D.C. 1986); *Publicker Indust., Inc. v. Cohen,* 733 F.2d 1059, 1074 (3d Cir.1984); *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D.N.Y.1976). Where the parties are private, the right to rely on confidentiality in their dealings is more compelling than where a government agency is involved, as the public has a countering interest in, and thus the claim of access to the conduct of public business by a governmental agency.

plication of *Younger* is not justified. *Palmieri*, 779 F.2d at 865.

■ The sealing was not improvident. It was not on its face illegal. It was not intended to serve any ulterior or nefarious purpose. It was intended to carry out the undertaking of confidentiality in their original contract. The terms of the original agreement, and the settlement, could have been challenged and, if successful, discovered under the FOIA. Conn.Gen.Stat. § 1–18a(d). As the FOIA provided an element of protection of the public interest in the contractual functioning of the City and, as there was no suggestion of a thwarting of that interest by rejection of a FOIA request, it was deemed appropriate to grant the parties' request to seal the court record as a continuation of the purposes of the parties in the confidentiality for which they contracted. The record then, and until very recently, was bereft of any suggestion of a resort to a FOIA request. Thus, when the order entered, there remained an alternative opportunity to access information concerning the settlement and the entire transaction (not within the disclosure requested here by the intervenors) by a FOIA request.

As the sealing was not improvident, there remains the question of whether intervenors have shown the requisite "extraordinary circumstances" or "compelling need." *Palmieri*, 779 F.2d at 866. In the public's right to access and the rationale for openness of the court's records, there is a need. Intervenors' burden of proving a compelling need is not met, however, when another route, the FOIA, could serve their purposes. Such is analogous to the "special investigatory powers" available to the federal government, the petitioner against the sealing order in *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299–1300 (7th Cir.1981), and to the State of New York in *Palmieri*, 779 F.2d at 866. The public need or interest in the information is not here defined solely by the presumption of openness of this court's records, but also by the openness of the contractual transac-

tion of the municipality, a matter of state law.[6] The latter can readily be decided in the administrative proceedings provided in the FOIA and an appeal to the FOIA Commission and the Connecticut courts. Conn. Gen.Stat. § 1–21i(d). It would seem anomalous for this court to find a compelling need under Connecticut law only to have a contrary result reached in the Connecticut FOIA process. A negative response to the FOIA request would remove, as an element of the public need, any concept of the public right to the information as a matter of state law. It would seem appropriate to defer that question to the administrative and judicial processes of Connecticut which are better equipped to resolve a question of state law. Further, a positive response will provide intervenors with the information and render their request here academic.

Such a finding does not decide whether public need for the information, founded in the rationale for the openness of court records, is sufficiently compelling to overcome the presumption of preserving a sealing not shown to have been improvidently granted. That question can be decided on a renewal of intervenors' motion if their FOIA request is denied.

Thus, the availability of the FOIA procedure makes intervenors' need at least less compelling. There is no showing of immediacy to their need, in the sense of there being a crisis. Intervenors have thus not met their burden of proving a compelling need at this time. Neither have the circumstances of the request for access been shown to be so extraordinary as to overcome the presumption favoring the sustaining of an order not shown to have been the result of indiscretion. The FOIA process is not shown to be so protracted as to be a futile exercise to obtain the information to which intervenors claim entitlement within a meaningfully reasonable time.

*Summary*

The sealing order was not entered improvidently. The parties have shown a first blush legitimate interest in preserving their agreed-on confidentiality of their deal-

6. Connecticut's courts adjudicative records are exempt from the application of FOIA, Conn. Gen.Stat. § 1–19c. However, the request here would be of a municipality's records.

**538**

ings. Intervenors, acting in the interests of the public, in part, as well as relying on their membership in the fourth estate, have shown a need for, and thus a presumptive right to, access to the court records as a matter of good government and to serve as a check on the function and exercise of authority by the courts. However, a preliminary question of state law, whether the municipality's records should be open to the public under the FOIA should be resolved first and thus may provide intervenors with the information they wish and perhaps much more. Resolution of that question and the potential of redress through the FOIA renders intervenors' need less compelling and precludes a finding of extraordinary circumstances on the present record.

The motion to vacate is denied, without prejudice to renewal after determination of intervenors' FOIA request.

SO ORDERED.