ELIASON *v.* FUNK ᴇᴛ ᴀʟ.

[No. 139, September Term, 1963.]

352

*Decided January 27, 1964.*

*Motion for rehearing filed in proper person February 5, 1964, denied February 12, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*Jay Fred Cohen,* with whom was *Elmer O. Eliason, pro se,* on the brief, for the appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for costs entered after the

court granted a motion to dismiss an action against John B. Funk and Russell S. Davis. These defendants were sued, with three others, in a narr alleging conspiracy to cause the appellant's discharge from the Classified Service. The court sustained a demurrer filed by the other three, with leave to amend, but that ruling is not before us.

The motion purported to be based upon Rule 323 b, which provides:

> "b. *Motion Mandatory — Charitable and Governmental Immunity.*
>
> The defense of total or partial charitable or governmental immunity shall be raised by motion pursuant to this Rule. Such motion shall state specifically the grounds for immunity. If a ground for partial immunity is that the damages claimed exceed the limits of available insurance the court shall postpone consideration of this particular ground until after trial of the action on its merits."

A Committee Note points out that charitable corporations are immune from suit, but that by virtue of Code (1957), Art. 48 A, sec. 85, the charity may not plead immunity to the extent that its tort liability is covered by insurance. See also Code (1963 Supp.), Art. 48 A, sec. 480. Numerous examples are given of defenses that should be raised under the Rule. The note concludes with the statement that "while the defense of governmental immunity rests on a different basis from that of charitable immunity, it is believed that there are equally persuasive reasons requiring that the defense be raised and its validity determined at an early stage in the proceedings."

None of the problems raised by the existence of insurance are present in the instant case, nor is there any claim of liability on the part of the State itself. We think the Committee simply did not have in mind, when it amended the Rule in 1961, the immunity, or more properly the privilege, of State officials, acting in good faith and within the scope of their official duties, to avoid liability. We are constrained to hold that the motion was improperly filed, for the reason that Rule 323 b is restricted to actions against charitable corporations and govern-

mental agencies, *eo nomine,* and does not apply to actions against public officers. The immunity of such officers, where it exists, rests upon wholly different grounds from that of the State. See *Muskopf v. Corning Hospital District,* 359 P. 2d 457, 462 (Cal.) ; *Lipman v. Brisbane Elementary School District,* 359 P. 2d 465 (Cal.). In 3 Davis, *Administrative Law Treatise,* the author deals separately, in chapter 25, with governmental tort liability, and in chapter 26 with officers' tort liability. In a suit such as this, we think the defense of immunity, or privilege, should be raised by the pleadings and not by a mandatory preliminary motion.

The appellant in the instant case treats the motion to dismiss as a demurrer, for he cites *Carr v. Watkins,* 227 Md. 578, 585, for the proposition that a defense of qualified privilege is not available on demurrer. See also *Powell v. American T. and L. Co.,* 131 Md. 539, 543. The Attorney General counters with a contention that the privilege is absolute, and may be raised on demurrer. The narr alleged that the plaintiff lost his employment because the defendants Webster and Stern gave perjured testimony at a hearing before Davis, Commissioner of State Personnel, on charges placed by Funk. The motion identifies Funk as the chairman of the State Roads Commission, and asserts that the declaration fails to allege any facts to show that the defendants Funk and Davis were acting with malice or outside the scope of their official duties. The declaration did allege, however, that all the defendants "knowingly, willfully, wrongfully and maliciously, conspired against the plaintiff for the wrongful purposes * * *" of having him removed from his position and from the Classified Service. Since both parties seem to treat the motion as a demurrer, we are constrained to do the same.

Upon the scanty facts alleged, the allegation of malice is a mere conclusion of the pleader, as the trial court held in the case of the co-defendants. The principle finds support in *Carder v. Steiner,* 225 Md. 271, 275, and cases there cited. It is true that there is an allegation that the two co-workers gave perjured testimony, but there is no allegation that this was known to Funk and Davis. The fact that Funk placed charges which were heard by Davis and decided against the plaintiff, rightly

or wrongly, does not suggest or permit an inference of malice. See 3 Davis, *supra* at § 26.04, p. 529. Two cases from California are of interest in this connection. *Everett v. California Teachers Assn.,* 208 Cal. App. 2d 291 (D. Ct. App.) ; *Lesperance v. North American Aviation, Inc.,* 31 Cal. Rptr. 873 (D. Ct. App.).

The Attorney General seeks to bolster his argument with the past history of this litigation. Eliason appealed his removal by Davis to the Baltimore City Court, and that court affirmed the removal holding that without regard to the testimony of his co-workers, who testified he gave no reason for his refusal to stay on the job as requested, and on his testimony alone, that he would stay only to perform electrical work, his removal was justified. The Attorney General has printed pertinent parts of that record, and claims that we can take judicial notice of it, citing *Evans v. Shiloh Baptist Church,* 196 Md. 543, 551. This record shows affirmatively that the hearing was pursuant to Code (1957), Art. 64 A, sec. 33 and Rule 47 D of the Regulations of the Merit System. The appellant was represented by counsel of his own choosing, witnesses were regularly summoned, sworn and cross-examined, and the decision was appealed. An appeal to this Court was not taken, but a motion to reopen was later filed in the lower court, and we affirmed an order denying the motion. *Eliason v. Comm'r of Personnel,* 230 Md. 56. We later affirmed an order denying a writ of mandamus against the State Roads Commission and the Commissioner of Personnel. *Eliason v. State Roads Commission,* 231 Md. 257. These prior proceedings were doubtless known to the trial court and we think they would have justified a refusal of leave to amend if it had been requested, for they showed that no basis in fact existed for the charges of misconduct in the declaration, or at least that the alleged conspiracy played no part in the outcome of the proceedings.

We are fully aware of the difficulties presented by the state of the pleadings. Under the general rule that a demurrer admits facts well pleaded, it is ordinarily not possible to consider evidentiary matter. Doubtless the better procedure in the instant case would have been for the Attorney General to file a motion for summary judgment, with supporting affidavits, in

connection with pleas of privilege and *res judicata.* Under the unusual circumstances of the case, however, we are constrained to deal with the case as if so presented.

It has been held that judges have an absolute privilege from suits arising out of their judicial acts. *Bradley v. Fisher,* 80 U. S. (13 Wall.) 335, 347; *Alzua v. Johnson,* 231 U. S. 107; *Sires v. Cole,* 320 F. 2d 877 (C.A.9th); 3 Davis, *supra,* sec. 26.01 p. 508. See generally 2 Harper & James, *Torts,* p. 1645; Prosser, *Torts* (2d. ed. 1955) § 109 at p. 780; Jennings, *Tort Liability of Administrative Officers,* 21 Minn. L. Rev. 263, 270-74; Handler & Klein, *The Defense of Privilege in Defamation Suits against Government Executive Officials,* 74 Harv. L. Rev. 44, 53. Prosecutors in judicial hearings are afforded the same privilege. *Yaselli v. Goff,* 12 F. 2d 396 (C.A.2d) *aff'd per curiam* 275 U. S. 503; *Kostal v. Stoner,* 292 F. 2d 492 (C.A. 10th), *cert. den.,* 369 U. S. 868; *Watts v. Gerking,* 228 P. 135 (Ore.). This privilege has been extended to minor tribunals and to officers exercising discretionary or quasi-judicial functions, with a trend toward an equally absolute application, particularly in the federal courts. See *Barr v. Matteo,* 360 U. S. 564; *Howard v. Lyons,* 360 U. S. 593. Cf. *Wheeldin v. Wheeler,* 373 U. S. 647. Some state courts have adopted a broad application. *Hardy v. Vial,* 311 P. 2d 494 (Cal.); *Sweeney v. Young,* 131 Atl. 155 (N. H.); *Watts v. Gerking, supra; Lacy v. City of Des Moines,* 113 N. W. 2d 279 (Ia.). But a number of states extend the privilege only to actions taken in good faith, indicating that malicious actions would not be protected. A strong statement of this position is found in *Bedrock Foundations v. Brewster,* 155 A. 2d 536, 545 (N.J.). See also *Corrao v. Mortier,* 96 N. W. 2d 851 (Wisc.); *Peterson v. George,* 96 N. W. 2d 627 (Neb.); *List v. O'Connor,* 158 N. E. 2d 103 (Ill. App. Div.), *aff'd on other grounds,* 167 N. E. 2d 188.

The Maryland cases seem to indicate that discretionary action will be protected only in the absence of malice. *Friend v. Hamill,* 34 Md. 298; *Carr v. Watkins, supra* at p. 585, and cases cited. But the instant case is much closer factually to the cases dealing with judicial actions, where there is a right to review, than to the discretionary acts of law enforcement of-

ficers. Some of the writers recognize a distinction along these lines. See Handler & Klein, *supra* at 54-59 and Jaffe, *Suits against Governments and Officers; Damage Actions,* 77 Harv. L. Rev. 209, 222 (footnote 42).

We need not hold that the privilege is absolute in the instant case. If we assume, without deciding, that the privilege was merely qualified, the trial court still acted properly in granting the motion to dismiss, because there were no facts alleged (and none that could be alleged in the light of the record of the former trial in the Baltimore City Court) from which bad faith or malice could be inferred; that court found on the former trial that the discharge was justified on the plaintiff's own testimony. That Eliason refused to stay on duty during a snow emergency was undisputed, and this was enough to furnish ground for the discharge.

*Judgment affirmed, with costs.*