## ROBINSON *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY ET AL.

[No. 454, September Term, 1970.]

*Decided June 2, 1971.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Leonard R. Goldstein* for appellant.

*Martin A. Hertz* for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

On 24 June 1970 Robinson sued the Board of County Commissioners of Prince George's County (County) and two of its gendarmerie, Borregoord and Austin. He declared, in substance, that in the late afternoon of 19 July

344

1969, Borregoord and Austin, "while acting within the scope of their employment" by the County "did then and there willfully, maliciously, and without justification or provocation, assault, beat, abuse, mistreat and bruise" him when they pulled him "out of a car in which he was a passenger, and held his chest down on the [hot] hood of the said car." His "arms were then wrenched and twisted behind his back, and handcuffs placed very tightly on" him. As a "direct and proximate result of said assault and battery" he suffered "multiple burns on his chest" and sustained injuries to his skull—they hit him on the head with "handcuffs and night sticks"—causing him to incur "medical and hospital expenses." He is "lean"; they "are men of comparative[ly] large physical stature." They "acted maliciously and were guilty of a wanton disregard of [his] rights and feelings." They "did then and there falsely, maliciously and without just cause * * * arrest [him] * * * on charge[s] of disorderly conduct and resisting arrest, * * * [they took him] to the police station where he was forceably imprisoned, kept, detained and restrained of his liberty" and upon the trial of said charges he "was acquitted * * * and discharged from custody." His prosecution "was wholly unfounded and without just cause and was begun, carried on and prosecuted" out of malice and with the intent "to wrong and injure him." They "well knew that the prosecution * * * was false, groundless and without probable cause * * *." His injuries have caused him "great mental anguish and suffering, embarrassment, humiliation and mortification"; he lost time from his business; he sustained "a loss of health, nervous shock, and great mental and physical suffering"; his reputation and credit have been damaged; he "has been brought into public scandal [and] infamy." He demanded compensatory and punitive damages and prayed a jury trial.

Apparently intending to proceed under Maryland Rule 323 b the appellees filed a "Motion Raising Preliminary Objection." The County asserted that "while exercising

governmental functions, [it] is immune from suit." Borregoord and Austin, in like manner, stated that "while exercising the governmental functions of * * * [the County] * * * [they are likewise] immune from suit." [1] The trial judge, Bowie, J., granted the motion both as to the County and as to the policemen and from his order of 29 October 1970 Robinson has appealed.

## I.

Robinson, con brio, importunes us to renounce those tenets "deeply ingrained in the law of Maryland," [2] to enlist in the crusade against sovereign immunity and to join the ranks of those courts [3] already marching under the pennons of the law professors. [4] We shall not do so because we have said quite often that this is a province of the legislative bodies we ought not to invade. *Duncan v. Koustenis*, 260 Md. 98, 104 (1970). In this regard we take notice of what is indeed a wry turn of events. In the charter approved on 3 November 1970 the voters of Prince George's County made their new government liable to be sued in tort. [5] We think Judge Bowie's action in respect of the County was correct.

---

1. *"Motion Mandatory—Charitable and Governmental Immunity.*
   "The defense of total or partial charitable or governmental immunity shall be raised by motion pursuant to this Rule. Such motion shall state specifically the grounds for immunity. If a ground for partial immunity is that the damages claimed exceed the limits of available insurance the court shall postpone consideration of this particular ground until after trial of the action on its merits."

2. See Duncan v. Koustenis, 260 Md. 98 (1970), in which Judge Barnes, for the Court, discussed many of our earlier decisions.

3. Evans v. Board of County Comm'rs of County of El Paso, 482 P. 2d 968 (Col. 1971); Hargrove v. Cocoa Beach, 96 So. 2d 130 (Fla. 1957); Williams v. Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961); McAndrew v. Mularchuk, 33 N. J. 172, 162 A. 2d 820 (1960).

4. E. Borchard, *Government Liability and Tort*, 34 Yale L.J. 1 (1924); K. C. Davis, *Sovereign Immunity Must Go*, 22 Ad.L.Rev. 383 (1970); W. Prosser, *Law of Torts* § 125 (1964); 2 Harper and James, *The Law of Torts* § 29.1 (1956); 3 Davis, *Administrative Law Treatise* § 25 (1958).

5. Section 1013 of that charter provides:
   "Governmental Liability. The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The

## II.

But we think the motion was granted improvidently in respect of Borregoord and Austin. In *Eliason v. Funk*, 233 Md. 351 (1964), we held that Rule 323 b "is restricted to actions against charitable corporations and governmental agencies, *eo nomine,* * * * [that it] does not apply to actions against public officers" and that the "defense of immunity, or privilege, should be raised by the pleadings and not by a mandatory preliminary motion." Nonetheless we treated the motion as a demurrer because "both parties seem[ed]" to have so treated it. More recently, however, we "chided the bar for its disregard" of the rules, and we reminded "all hands that they [the rules] are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' *Brown v. Fraley*, 222 Md. 480, 483 (1960)." *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 570 (1970). It is for this reason, therefore, that we shall reverse so much of the order of the learned trial judge as applies to Borregoord and Austin and remand the case for further proceedings. It is true, of course, that in *Duncan, supra,* the defendant Koustenis raised the same defense by means of the same motion, the propriety of which was questioned neither in this Court nor in the court below and it was for that reason the question was not discussed.

Since, upon remand, it is likely Borregoord and Austin will demur to Robinson's declaration further comment may not be amiss. In *Duncan* we said that "[i]n Maryland governmental immunity is extended to all non-malicious acts of public officials * * * when acting in a dis-

---

County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program."

The instant case arose prior to adoption of the charter and no one contends that its provisions should be applied retrospectively.

cretionary * * * capacity." Judge Barnes went on to discuss in depth the relevant decisions of this Court but little of what he said needs to be repeated here. It is clear that policemen are "public officials," *Wilkerson v. Baltimore County,* 218 Md. 271 (1958), *Harris v. Mayor and City Council of Baltimore,* 151 Md. 11 (1926), and that when they are within the scope of their law enforcement function they are clearly acting in a discretionary capacity. *Eliason, supra.* But, as Judge Barnes suggested, we have added the qualification that when acting in a discretionary capacity public officials, to enjoy immunity, must act without malice. *Duncan, supra* at 104; *Eliason, supra* at 356; *Carr v. Watkins,* 227 Md. 578, 585 (1962); *Carder v. Steiner,* 225 Md. 271, 274 (1961). *See also Clark v. Ferling,* 220 Md. 109 (1959); *Cocking v. Wade,* 87 Md. 529 (1898).

Along with the apparent erosion of sovereign immunity which, as we have said, we shall continue to resist, there seems to have been an apparent expansion of the concept of immunity for public officials acting within the scope of their discretionary authority. Professor Davis in his *Administrative Law Treatise* has said:

> "The direction of movement of the case law on officers' tort liability during the past dozen years is unmistakably toward enlargement of the area of immunity. Federal law has long been reasonably clear that officers exercising discretionary functions are immune from liability for their negligence, and the state courts have been divided. The state courts during the twelve years are in general moving toward the federal law." *Id.* at § 26.7 (1970 Supp.).

The federal law mentioned was given a boost by the Supreme Court's holding, in *Barr v. Matteo,* 360 U. S. 564 (1959), that the acting director of the Office of Rent Stabilization was absolutely privileged in a libel suit. But we have not moved in this direction. In *Carr v. Watkins, supra,* we said:

"It has been felt that a qualified privilege is sufficient, so that immunity is conditioned upon the absence of malice (unlike the situation where there is absolute privilege) and also upon action within the scope of the actor's duties and authority." *Id.* at 585.

We think our own rule is sound. Indeed we can not think of any reason why a public official should not be held responsible for his malicious actions even though he claims they were done within the scope of his discretionary authority. Other jurisdictions have so held, Prosser, *supra* at 1016, and we do so here.

## III.

There remains the question whether the allegations of malice, as stated in the narr., are legally sufficient to survive a demurrer. Borregoord and Austin, of course, brand them as nothing more than conclusions of the pleader but we put them a little higher. In this regard *Carder v. Steiner, supra,* seems to appeal to both parties. There Judge Hammond (now Chief Judge), who wrote for the Court, dealt with much the same issue. Carder, an inmate of the Maryland House of Correction, was injured when a guard closed a metal door on him. He sued both the guard and the warden. He alleged the warden acted maliciously, negligently, etc., in employing the guard who likewise acted maliciously, negligently, etc., in closing the door. In respect of the warden Judge Hammond said:

"The allegations that the Warden 'maliciously, wilfully, negligently and without due care' employed, retained and supervised the guard knowing him to be unfit, are conclusions of the pleader without allegations of fact to support them. There are no allegations of facts which show evil purpose, ill will or malice. Significantly lacking is the allegation the Warden participated in any way in the acts which injured appellant. The allegations made fail to state a

cause of action against the Warden. *Clark v. Ferling, supra; Martin v. Moore,* 99 Md. 41, 48; *Cocking v. Wade,* 87 Md. 529." *Id.* at 275.

In respect of the guard he had this to say:

"* * * The allegations that the guard wilfully and maliciously closed the door on the prisoner, knowing that the latter at the time was not free and clear, and that the cell door would strike him, could perhaps be read to charge a deliberate and malicious intent to hurt the prisoner, if it were not for the juxtaposition of the words 'negligently and without due care.' The inclusion of these words in the allegation makes it inconsistent and its meaning doubtful.

"There are lacking allegations of plain fact sufficient to charge actual malice or deliberate intent, and we find that there was no error in sustaining the guard's demurrer to the declaration. The words of a pleading, like those of any written instrument, should be given a reasonable construction. Nevertheless, whenever a pleading is so doubtful and ambiguous as to be fairly capable of two interpretations, it will be construed most strongly against the party filing it. 1 Poe, *Pleading and Practice,* Tiff. Ed., Sec. 557. *Maenner v. Carroll,* 46 Md. 193, 215; *Steinwedel v. Hilbert,* 149 Md. 121, 126." *Id.* at 276.

Borregoord and Austin see in the latter quotation firm support for their contention. We think their vision is myopic. Neither negligence nor want of due care is mentioned in Robinson's declaration and we think his allegations of malice are sufficiently factual to lift them above the category of "mere conclusions." He said he was beaten, bruised, burned, humiliated, imprisoned, charged and prosecuted, all without just cause and with malice, that Borregoord and Austin "well knew that the prosecution of * * * [Robinson] was false, groundless and

350

without probable cause," and that upon trial he was found to be not guilty of the false and groundless charges. Indeed Judge Bowie said "short of going into actual proof, the declaration has set forth everything necessary to show malice and is thus sufficient." While we prefer not to put it quite that high we agree that the allegations are indeed sufficient.

*Affirmed in part; reversed in part.*

*Case remanded for further proceedings conformable with the views expressed in this opinion.*

*Costs of this appeal to be paid one-half by the appellant and one-half by the appellees Borregoord and Austin.*