**John H. WOODY and Joan Woody, as husband and wife and as parents of Patricia Woody, Deceased,**

**v.**

**CHESAPEAKE BEACH PARK, INC., a corporation, et al.**

**Civ. No. 72–619–K.**

United States District Court,
D. Maryland.

Nov. 30, 1972.

Donald J. Chaikin and Ronald A. Karp, Washington, D. C., for plaintiffs.

Robert E. Powell, Baltimore, Md., for defendant Chesapeake Beach Park, Inc.

Charles E. Brooks, Towson, Md., for defendant Dr. Hugh W. Ward.

Hamilton O'Dunne, Baltimore, Md., for defendants Maryland State Police and O. D. Hale.

Melvin J. Sykes, Donald E. Sharpe and Raymond J. Coughlan, Jr., Baltimore, Md., for defendant Pinkney Sewell & Sons Funeral Home.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Plaintiffs, John H. Woody and Joan Woody,[1] citizens of Maryland have sued Chesapeake Beach Park, Inc. (Chespeake) and other defendants, all citizens of Maryland, alleging violations of their constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) in connection with handling of the body of their deceased child after she was drowned

---

1. John H. Woody and Joan Woody sue in their individual capacities as husband and wife of their deceased daughter, Patricia Woody. John H. Woody also sues as the administrator of Patricia's estate.

while using the facilities of Chesapeake and contending that discriminatory racial motives caused the body of the child to be taken to a funeral home which allegedly services only blacks. In addition, plaintiffs have asserted survival and wrongful death actions against defendant Chesapeake (but not against any of the other defendants) alleging negligence on the part of Chesapeake in connection with the drowning. Chesapeake has moved to dismiss the survival and wrongful death actions on the ground that this Court lacks subject matter jurisdiction over those claims.

## I.

■ Plaintiffs' survival and wrongful death actions are based upon Chesapeake's alleged negligence in operating its swimming pool in a manner which proximately caused their daughter's death. Those negligence claims, the determination of which is governed by Maryland law, relate to occurrences which were completed prior to the commencement of other occurrences which give rise to plaintiffs' 1983 and 1985(3) federal question claims. The latter stem from certain steps allegedly taken by Chesapeake and the other defendants in connection with the taking of plaintiffs' deceased daughter's body to a funeral home and to the subsequent embalming of her body. Under Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it would appear doubtful whether this Court has pendent jurisdiction over the pre-death claims of plaintiffs against Chesapeake since any actions based solely thereon are unrelated to and separate from plaintiffs' federal 1983 and 1985(3) claims against

Chesapeake and the other defendants. In *Gibbs, supra* at 725, 86 S.Ct. at 1138, Mr. Justice Brennan wrote that in order for a federal court to assert pendent jurisdiction over state claims, "[t]he state and federal claims must derive from a *common nucleus of operative fact.*" (Emphasis added.) In this case, plaintiffs' federal claims against Chesapeake and the other defendants stem from the post-death period, while plaintiffs' state survival and wrongful death actions against Chesapeake derive from the pre-death period.

However, in addition, it would appear quite prejudicial to require the other defendants, and perhaps also Chesapeake, to defend in one case at the same time against the Civil Rights claims directed against all of the defendants and the alleged negligence claims directed solely against Chesapeake.[2] The latter are apparently not based in any way on any element of racial discrimination.[3] Thus, the concept of "fairness to [the] litigants"[4] leads this Court herein to separate under Federal Civil Rule 42(b) the pre- and post-death claims for trial and accordingly dictates that even if pendent jurisdiction exists in this case, this Court should exercise its discretion not to assume such jurisdiction. So doing, i.e., refusing to exercise such jurisdiction over the statelaw based claims even if the same exists, this Court hereby dismisses the plaintiffs' survival and wrongful death claims against Chesapeake.

## II.

Plaintiffs also have sued the Department of Maryland State Police (Department), under the doctrine of respondeat superior, for damages and injunctive relief alleging violations of their constitu-

---

2. *See* n. 3 on page 527, *infra.*

3. In *Gibbs,* at 727, 86 S.Ct. at 1139, Mr. Justice Brennan also noted that—
   . . . there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion

in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed. Rule Civ.Proc. 42(b). If so, jurisdiction should ordinarily be refused.

4. *Gibbs, supra* at 726, 86 S.Ct. 1130.

tional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) in connection with handling of the body of their deceased child after she was drowned while using the facilities of Chesapeake. The Department has moved to dismiss the complaint as to it, on grounds, *inter alia,* that it is not properly suable in this case.

Amendment XI of the Constitution of the United States provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."

■■■■ Although not apparent from its plain reading, the Eleventh Amendment prohibits suits against a state by its own citizens, absent consent.[5] Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Nevertheless, insofar as plaintiffs seek injunctive relief against the Department, their claims are not barred by the Eleventh Amendment. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Plaintiffs' claims for damages against the Department, however, stand on different grounds. The Department of Maryland State Police is established pursuant to Md.Ann.Code art. 88B, § 1 (1957). A damage judgment against the Department could only be satisfied by payment from state funds.[6] Thus, the damage claims by plaintiffs against the Department are claims which, if successful, would operate "so as to compel the state [of Maryland] . . . to make pecuniary satisfaction for any liability."[7] Accordingly, those damage claims are barred by the Eleventh Amendment. Ford Motor Co. v. Trea-

sury Department, 323 U.S. 459, 462–464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Ex Parte New York, 256 U.S. 490, 500, 501, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Williams v. Eaton, 443 F.2d 422, 429 (10th Cir. 1971); Francis v. Davidson, 340 F. Supp. 351, 370 (D.Md.1972).

For the reasons set forth above in this Memorandum and Order, the Department's motion to dismiss on grounds of Eleventh Amendment immunity is denied insofar as injunctive relief is sought and granted insofar as damages are sought.

---

5. Plaintiffs do not claim the Department has consented to this suit. Further, the Maryland Court of Appeals in Robinson v. Bd. of County Comm'rs, 262 Md. 342, 344, 345, 278 A.2d 71 (1971), made clear that a governmental body performing police functions was immune from suit under Maryland law. The Department of Mary-

land State Police is a state governmental body established pursuant to Md.Ann. Code art. 88B, § 1 (1957).

6. *See* Md.Ann.Code art. 88B, § 28 (1957).

7. Ex parte New York, 256 U.S. 490, 500, 501, 41 S.Ct. 588, 591, 65 L.Ed. 1057 (1921).