625 A.2d 941

**Stephen E. HARRIS**

v.

**THE BALTIMORE SUN CO. et al.**

**No. 95, Sept. Term, 1992.**

Court of Appeals of Maryland.

June 8, 1993.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Carolyn A. Quattrocki, Asst. Atty. Gen., all on brief), Baltimore, for appellant.

Mary R. Craig (Doyle & Craig, P.A., Baltimore), both on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

Procedurally, this appeal involves a newspaper's action under the Public Information Act to obtain the records of certain expenses incurred by the Office of the Public Defender (OPD) in defending a highly publicized, capital murder prosecution. Substantively, this appeal involves the scope of counsel's duty of confidentiality under Rule 1.6 of the Maryland Lawyers' Rules of Professional Conduct (MR).

OPD is created by Md.Code (1957, 1990 Repl.Vol.), Art. 27A. It is "the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents." Art. 27A, § 1. Section 4(a) of Art. 27A mandates that "[i]t shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article." In the course of holding that a public defender does not act under color of state law within the meaning of 42 U.S.C. § 1983, the United States Supreme Court has described the relationship between an accused and a public defender.

> "From the moment of her appointment, [the public defender] became [the accused's] lawyer, and [the accused] became [the public defender's] client. Except for the source of payment, their relationship became identical to that existing between any other lawyer and client. 'Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.' ABA Standards for Criminal Justice 4–3.9 (2d ed. 1980)."

*Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509, 516 (1981) (footnote omitted).

John Frederick Thanos (Thanos) was charged in Baltimore County with two murders arising out of one criminal episode. The death penalty was sought for each murder. The prosecution was removed to Garrett County where Thanos was represented by three or four public defenders, at least some of whom resided in the Baltimore area. A trial conducted from January 20 to January 31, 1992, resulted in verdicts of guilty but in a mistrial of the sentencing proceedings. New sentencing proceedings were scheduled for June 1, 1992.

Glenn Small (Small), a reporter employed by The Baltimore Sun Company (The Sun), on or about February 25, 1992, requested of the OPD certain information concerning

expenses incurred by OPD in its representation of Thanos in Garrett County. The Sun's request was made pursuant to the Maryland Public Information Act, Md.Code (1984, 1993 Repl.Vol.), §§ 10–611 through 10–628 of the State Government Article (the Act).[1] Specifically, The Sun sought records relating to any overtime wages paid to named OPD attorneys who, as Small had observed, were defense counsel for Thanos; receipts for "motel, meal and travel" for those attorneys; and records of the fees and expenses paid to four expert witnesses, identified by name, whom Small had observed either in attendance, or testifying, at the Thanos trial in Garrett County. OPD denied The Sun's request in its entirety.

The instant action was commenced in the Circuit Court for Baltimore City by The Sun and Small against Stephen E. Harris, Esq. (Harris), the Public Defender for the State of Maryland. As Public Defender, Harris has general responsibility for the operations of OPD and, as defined in § 10–611(d) of the Act, is the "official custodian" of the records sought in this action. The circuit court, after analyzing in a written opinion many aspects of the problem presented, ordered OPD to produce the requested records. OPD appealed to the Court of Special Appeals. This Court, on its own motion, issued the writ of certiorari prior to consideration of the matter by the Court of Special Appeals.

There is no dispute that the requested records are public records within the Act. § 10–611(f). Under § 10–613(a), "[e]xcept as otherwise provided by law, a custodian shall permit a person ... to inspect any public record at any reasonable time." OPD, however, justifies its refusal to produce by reference to § 10–615, which in relevant part reads:

"A custodian shall deny inspection of a public record or any part of a public record if:

---

1. Unless otherwise indicated all statutory references are to Md.Code (1984, 1993 Repl.Vol.), State Government Article.

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

. . . .

(iii) the rules adopted by the Court of Appeals . . . ."

■ OPD submits that its attorneys owe Thanos the same duty to maintain confidentiality of information that all lawyers owe to their clients under MR 1.6. This contention is correct. Indeed, the principle is not disputed by The Sun.

MR 1.6, "Confidentiality of Information," in relevant part, provides:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal or fraudulent act...;

(2) to rectify the consequences of a client's criminal or fraudulent act...;

(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client...;

(4) to comply with these Rules, a court order or other law."

OPD submits that the information requested by The Sun is "information relating to representation of a client" which defense counsel may not reveal under the proscriptions of MR 1.6(a), and, accordingly, the requested information is a confidential record that OPD must withhold from inspection under § 10–615 of the Act.

The Sun's response to OPD's position is twofold. First, The Sun states that the appropriate analysis of a request under the Act is under the law relating to attorney-client privilege, which does not recognize fees paid as privileged communications. The requested information, as non-privileged and even if it is confidential per MR 1.6, must be released because an attorney must disclose non-privileged information upon compulsion of law—in this case, the Act. Second, the information cannot be withheld because, under an exception in MR 1.6(b)(4), disclosure of the information is necessary to comply with "other law," namely, the Act.

## I

The Sun cites two prior, reported instances in which disclosure of amounts paid as attorneys' fees was sought under a predecessor statute to the Act. In both instances the analysis was limited to the question of attorney-client privilege, but that limitation is not significant here.

In *Moberly v. Herboldsheimer*, 276 Md. 211, 345 A.2d 855 (1975), a newspaper sought disclosure, *inter alia*, of the amount paid by a hospital for legal services. The request was directed to the hospital which this Court held to be a municipal agency. The request was predicated on Md.Code (1957, 1975 Repl.Vol.), Art. 76A, a predecessor of the Act, under which the definition of "public records" excepted those records "privileged or confidential by law." Former Art. 76A, § 1(a). Legal fees paid by the hospital were held disclosable under the statute. This Court adopted the opinion of the trial court which said that " '[t]he communication by the client to the attorney is privileged, not the fee which the lawyer charges the client.' " *Id.* at 226, 345 A.2d at 863. *Moberly* had no need to discuss the attorney's broader duty of confidentiality, inasmuch as the request was directed to the client, not to the attorney.

The Attorney General of Maryland later opined consistently with *Moberly* in applying the 1975 version of the Act to a newspaper's request, submitted to the Maryland Auto-

mobile Insurance Fund (MAIF), for disclosure of the amount of fees paid to insurance defense counsel engaged to represent MAIF or its insureds.[2] The Attorney General ruled that the fee information requested must be furnished "since the entire subject of fees is outside the ambit of the attorney-client privilege." 62 Op. Att'y Gen. 579, 586 (1977). Had the person requesting information from MAIF addressed the request to a particular attorney engaged by MAIF to defend an insured, and had the request sought disclosure of the amounts expended in defense of the claim for the insured, a problem more analogous to that now before us would have been presented to the Attorney General.

The Sun also finds support for the proposition that only privilege can prevent disclosure under the Act in *In re Criminal Investigation No. 1/242Q*, 326 Md. 1, 602 A.2d 1220 (1992). In that case, a grand jury issued a subpoena to an attorney whose client had pleaded guilty to a narcotics charge. The subpoena sought legal fee information relating to that representation and to the representation of another client in a related forfeiture proceeding. Recognizing that the attorney-client privilege generally does not protect fee information, the circuit court nevertheless quashed the subpoena by relying on the attorney's obligation of confidentiality under MR 1.6. We reversed. The Sun points to a portion of our opinion where we said:

> "[T]he rule of confidentiality is broader than the attorney-client privilege. Rule 1.6 applies to confidential communications between a client and an attorney in all situations *except* where the 'evidence is sought from the lawyer through compulsion of law.' In the latter situation, only the attorney-client privilege, not the broader rule of confidentiality, protects against disclosure."

---

**2.** MAIF "is authorized and shall sell, issue, and deliver, upon payment of the premium set by [MAIF], a policy of automobile liability insurance to any Maryland resident" who meets certain qualifications. Md.Code (1957, 1991 Repl.Vol., 1992 Cum.Supp.), Art. 48A, § 243B(a)(1).

326 Md. at 5, 602 A.2d at 1222 (quoting Comment to MR 1.6).

The Sun argues that, here, there is "compulsion of law" under § 10–613(a) of the Act, so that the only relevant consideration is privilege. The deficiency in The Sun's argument arises from § 10–615(1), which limits the "compulsion of law." Section 10–615(1) requires the custodian to deny inspection of any part of a public record if "by law, the public record is ... confidential." Unlike the compulsion of a grand jury subpoena, there is no compulsion under the Act if the public record is confidential.

Finally, The Sun argues that the Act

"compels the Public Defender to disclose its expenses unless 'by law, the public record is ... confidential.' § 10–615(1). Rather than excuse the Public Defender from compliance with the [Act], Rule 1.6(b)(4) requires him to 'comply' with other laws."

Brief of Appellees at 10 (footnote omitted).

MR 1.6 does not achieve the result, in relation to the Act, for which The Sun contends. MR 1.6(a) imposes on lawyers a general and very broad obligation of confidentiality by prohibiting disclosure of information "relating to [the] representation." MR 1.6(b) sets forth four sets of circumstances under which a lawyer "may reveal such information to the extent the lawyer reasonably believes necessary." The Maryland Model Rules of Professional Conduct "are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Scope Note to Maryland Rules of Professional Conduct, Md.Code (1993 Repl.Vol.), 2 Md.Rules 503. Under the structure of MR 1.6, the lawyer who reveals confidential information, reasonably believing the revelation to be necessary in order to comply with other law, is not in violation of the general prohibition against disclosure and is not subject to professional discipline.

■ MR 1.6(b), however, is permissive. "Failure to reveal that which may be revealed, as opposed to that which

must be revealed, is not a basis for disciplinary action." *Attorney Grievance Comm'n v. Rohrback*, 323 Md. 79, 96, 591 A.2d 488, 496 (1991). Thus, MR 1.6(b)(4), contrary to The Sun's contention, does not require disclosure; rather, it permits departure from the otherwise general prohibition against disclosure when the lawyer reasonably believes disclosure is necessary to comply with other law.

■ Because MR 1.6(b)(4) imposes no obligation to disclose, it does not furnish any standard for determining when client information is confidential and not to be produced under the Act by an attorney who is the custodian of a requested public record. MR 1.6(a) does furnish a standard, but it is phrased as a prohibition. As a result, the lawyer-custodian of public record-client information can never violate the MR 1.6(a) prohibition against disclosure by refusing to produce requested public record-client information. Phrased another way, the lawyer-custodian of public record-client information can never violate the MR 1.6(a) prohibition against disclosure by refusing to produce requested public records, *even if production would not violate MR 1.6(a)*. Thus, MR 1.6(a), phrased as a prohibition, cannot furnish the standard for applying § 10–615(1), because the former permits denying all requests for production of public record-client information. That construction is contrary to the Act's policy that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." § 10–612(a).

■ We construe § 10–615(1), in relation to MR 1.6(a), as imposing an objective, affirmative standard. The lawyer-custodian of public record-client information must disclose requested information unless, by disclosing, the lawyer would violate MR 1.6(a) and thereby be exposed to professional discipline. If the requested public record is "information relating to representation of a client," which, if disclosed by the attorney, would place the attorney in violation

of MR 1.6, the information is confidential under § 10–615(1) and not to be produced under the Act.

## II

■ Under the foregoing holding the issue in this case is whether, if the Public Defender complies with The Sun's request, would the Public Defender reveal "information relating to representation of a client" in violation of MR 1.6(a). That issue, in turn, requires us to consider the scope of the phrase, "information relating to representation of a client," as used in the rule. That task is best performed by first comparing MR 1.6 with its predecessor provision. The Maryland Rules of Professional Conduct became effective January 1, 1987. 2 Md.Rules 499. In the predecessor Code of Professional Responsibility the lawyer's duty of confidentiality was addressed in DR 4–101. Md.Code (1986 Repl. Vol.), 2 Md.Rules 460. DR 4–101 in relevant part provided:

"Preservation of Confidences and Secrets of a Client.

(A) 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."

C. Wolfram, *Modern Legal Ethics* § 6.7.2, at 297 (1986), describes the distinction made in the Code of Professional Responsibility between confidences and secrets, saying:

"The secrets rule of the Code is different from the protection of confidences in at least two important ways. First, its coverage is much broader. The confidence rule simply duplicates the coverage of the attorney-client testimonial privilege with its technical rules of coverage, exceptions, and waiver. The secrets protection, on the other hand, covers a great deal more. Indeed, under a straightforward reading of DR 4–101(A), secrets includes much that is excepted from the definition of confidences by one or the other of the exceptions contained in the rules of the testimonial privilege. Second, secrets have no necessary connection with the privacy of communication concept that underlies the protection of confidences. The definition of secrets stresses two elements, either of which can bring it into operation: a client explicitly requests that the lawyer not reveal the information[,] or the nature of the information is such that its revelation is potentially embarrassing or detrimental to the client."

Comparing DR 4–101(A) with Rule 1.6 of the Model Rules of Professional Conduct, the same author states:

"The 1983 Model Rules are even more expansive than the 1969 Code in the size of the initial zone of confidentiality that they create. The definition in MR 1.6 transcends the Code ... (1) it includes all information regardless of when it was learned by the lawyer; [and] (2) it includes information without regard to whether disclosure would embarrass or work to the detriment of a client...."

*Id.* at 298.

The breadth of the confidentiality principle under Model Rule 1.6 has evoked concern from the commentators. In 1 G. Hazard, Jr. & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.6:201, at 158 (2d ed. 1992) (*Lawyering–Two*), the authors observe that "read literally and in isolation, the rule is so stringent as to approach the unworkable and the unrealistic." The same authors, in the earlier edition of the same

work, suggested that Model Rule 1.6(a) "must be given a somewhat qualified construction." G. Hazard, Jr. & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 96 (1985). They proposed that "disclosures that would be treated as insignificant *not only by the present client but also by the public generally* should be regarded as permissible, for they do not materially weaken the confidentiality principle." *Id.* at 98. The authors proposed that "[i]n functional terms, the line between permissible and impermissible disclosure should probably be drawn at the point of anonymity [of the client]." *Id.*

In the instant matter it is general public knowledge that Thanos is the client and the lawyers are from OPD. Thus, the proposal to use client anonymity in measuring whether "information relating to representation of a client" has been revealed is of no assistance in the matter at hand.

Wolfram also has considered the problems created by a literal application of Model Rule 1.6 and has presented the following analysis:

"[T]he expectation of confidentiality posited by the rationale of loyalty to client justifies prohibiting a lawyer from revealing information only if it poses a risk of harm to a client's interests. Yet MR 1.6 of the Model Rules, if read literally, goes much farther and prohibits a lawyer from revealing all client information, the good or neutral along with the potentially harmful. The only imaginable reason for such a universal prohibition is to provide prophylactic protection against lawyer misjudgments about which revelations are potentially harmful to a client's interests. Yet it is hardly imaginable that MR 1.6 should be read literally to prohibit a lawyer from revealing absolutely any information about a client except in the limited exceptions explicitly provided in the rule. A statement to a lawyer's spouse that the lawyer must travel to a distant city overnight to argue a case for an identified client fits literally within the MR 1.6 prohibition. But to prohibit innocuous talk about a client would be senseless, would

create morbid secretiveness among overscrupulous lawyers, and, by trivializing it, would detract from the soundness of the confidentiality principle. Instead, MR 1.6 should be read to prohibit those needless revelations of client information that incur some risk of harm to the client. Idle gossip, of course, should be prohibited because it incurs the risk of inadvertent disclosure of harmful client information and has no reason for utterance other than titillation or braggadocio."

Wolfram, *supra*, at 301.[3]

■ Viewing MR 1.6(a) as a prohibition applicable to the profession as a whole, we find Wolfram's analysis to be sound. There must be the potential for some harm to the client's interest before an attorney will be considered to have violated the prohibition of MR 1.6(a) and to be subject to discipline, for having revealed "information relating to representation of a client." Whether there is a risk or

---

**3.** The American Law Institute's ongoing project, the *Restatement of the Law Governing Lawyers* (Tent.Draft No. 3, 1990), of which Professor Wolfram is chief reporter, provides for the lawyers' duty of confidentiality in its § 111. That section reads in relevant part:

"The lawyer shall not use or disclose confidential client information ... if there is a reasonable likelihood that doing so will adversely affect a material interest of the client or if the client has directed that the lawyer not use or disclose it...."

*Id.* at 4. Comment d to § 111, in part, gives the following explanation:

"[Section] 111 prohibits a lawyer from using or disclosing confidential client information if doing so is reasonably likely to adversely affect a material interest of the client or if the affected client directs the lawyer not to use or to disclose such information. Adverse effects include all consequences that a lawyer of ordinary prudence would recognize as creating some risk of material misfortune, disadvantage, or other prejudice to a client, either during the course of the present representation or in the future. It includes consequences such as financial or physical harm, personal embarrassment, and similar prejudice that would be caused to a person of normal susceptibility and a normal interest in privacy. In case of reasonable doubt, the lawyer should not use or disclose confidential client information, unless the client consents...."

*Id.* at 8.

potential for harm to the client's interests turns on the facts and circumstances of the particular case.

Thus, Professors Hazard and Hodes have concluded that "the generalization that a lawyer has an unqualified duty of confidentiality to a client is simply incorrect in most contexts. Indeed, the generalization is essentially accurate *only* when the representation involves defense of a criminal accused. In most transactional representations, the generalization is seriously misleading."

*Lawyering–Two, supra,* § 1.6:201–1, at 158.6.

Here, we deal with a criminal prosecution for capital murder in which, on retrial, a death sentence was imposed for each of the murders charged. Those judgments have been affirmed on direct review by this Court. *Thanos v. State,* 330 Md. 576, 625 A.2d 947 (1993). Nevertheless, from the standpoint of the type of information requested by The Sun, MR 1.6's prohibition is not absolute. For example, assume that a privately retained criminal defense attorney asked one of the public defenders who represented Thanos how much had been charged by the expert psychologist who had examined Thanos and testified in Garrett County, because the inquiring attorney contemplated using the same psychologist as a possible defense expert in another case. If the public defender told the inquiring attorney the amount, there would seem to be no violation of MR 1.6 because there would seem to be no potential harm to Thanos's interests.

The same information, however, disclosed by the Public Defender to a newspaper may or may not result in a different answer, depending upon all of the circumstances. In the instant case neither the parties nor the circuit court analyzed the issue in quite the same way as we have analyzed it here. There has been no finding by the circuit court whether disclosure of the client information requested by The Sun potentially would harm Thanos's interests. The circuit court did analyze whether disclosure of the information would violate Thanos's sixth amendment right to coun-

sel, and the court concluded that it would not, but that is not the confidentiality analysis required under § 10-615 of the Act.

Accordingly, we shall remand this matter to the Circuit Court for Baltimore City, without affirmance or reversal, for further proceedings consistent with this opinion. For the guidance of the parties and circuit court on remand, two observations seem appropriate.

The first involves cases concerned with the disclosure of amounts paid to counsel and experts under the Criminal Justice Act, 18 U.S.C. § 3006A (the CJA), as illustrated by *United States v. Suarez*, 880 F.2d 626 (2d Cir.1989), a decision repeatedly cited in the circuit court's opinion in the case at hand. Under the CJA, defense counsel petition a United States District Court for approval of attorney's fees and expenses, including the fees and expenses of expert witnesses. Such an application was made in *Suarez*, a prosecution for the armed robbery of $7.6 million from a Wells Fargo depot in West Hartford, Connecticut in September 1983. A newspaper sought the names of payees, the amounts paid, and a very general description of the work done, *i.e.,* "for legal services." The district court granted the newspaper's request, but the order was stayed pending appeal. The Second Circuit affirmed.

The type of case illustrated by *Suarez* does not involve a disclosure requested on the authority of a public information statute, much less a statute which expressly excludes confidential records. The request in the *Suarez* type of case asserts a first amendment right to access to court papers, and the courts in those cases take a balancing approach between the asserted first amendment right of the requesting person and the accused's right to a fair trial and to the assistance of counsel. It is in the latter context that the *Suarez* court said: "We do not believe that disclosure of the amounts paid to attorneys and experts on appellants' behalf, or the identity of those who received them, impinges on appellants' rights." 880 F.2d at 631.

Second, the fact that the trial of Thanos in Garrett County has now concluded with verdicts of guilty and the imposition of death penalties that have been affirmed does not preclude, as a matter of law, potential harm to Thanos's interests by a disclosure of the requested information to a newspaper. In the direct and collateral reviews of death penalties by state and federal courts, the setting aside of judgments is not unknown.

## III

The Sun has cross-appealed from the circuit court's denial of The Sun's request for the award to it of counsel fees in the circuit court proceedings. The request was based on § 10–623(f) of the Act, which reads:

"If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred."

Because we vacate the judgment of the Circuit Court for Baltimore City, consideration of the cross-appeal is premature.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.*

CHASANOW, Judge, Concurring and Dissenting.

I concur with this Court's construction of the Maryland Public Information Act (MPIA), Maryland Code (1984, 1992 Cum.Supp.), State Government Article, §§ 10–611 through 10–628, and with its holding that, if the requested information is protected by the lawyer's obligation of confidentiality under Maryland Rule of Professional Conduct 1.6 (Rule 1.6), it should not be disclosed under the MPIA. I dissent, however, from the majority's construction of Rule 1.6. All

information relating to the representation of Thanos by the Public Defender ought to be confidential under Rule 1.6.

In pursuing the worthy purpose of securing the broadest possible media access to public information, the majority damages one of the most fundamental aspects of the attorney-client relationship, the attorney's duty of confidentiality to a client, and has all but repealed Rule 1.6. Ignoring the clear and explicit language of the Rule, as well as the "Comment" adopted by this Court, the majority holds that a lawyer may freely reveal any information relating to representation of a client unless "there is a risk or potential for harm to the client's interests...." 330 Md. 595, 608–09, 625 A.2d 941, 947. That construction not only contradicts the language of the Rule—it renders the Rule superfluous. Other rules clearly preclude a lawyer from doing anything that exposes the client to "a risk or potential for harm." *Id.* For example, Rule 1.8(b) says, "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation." The confidentiality rule, Rule 1.6, was meant to impose a far broader prohibition against free disclosure of information relating to a client than the majority imposes. Rule 1.6 is quite simple, straightforward, and direct. It is a guarantee of confidentiality that clients can readily understand. The Rule provides in relevant part:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal or fraudulent act ...;

(2) to rectify the consequences of a client's criminal or fraudulent act ...;

(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client ...;

(4) to comply with these Rules, a court order or other law."

The Rule provides an almost absolute prohibition against revealing information "relating to representation of a client," with a few expressly enumerated exceptions, *i.e.*, where the disclosure is impliedly authorized in order to carry out the representation, to prevent or rectify the client's criminal or fraudulent act, in an adversarial proceeding between the attorney and client, and to comply with a rule, statute or court order.

If there is any doubt about the meaning of Rule 1.6, the "Comment" adopted by this Court clarifies any possible ambiguity. That "Comment" provides in pertinent part:

"The observance of the ethical obligation of a lawyer to *hold inviolate* confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.

\* \* \* \* \* \*

A *fundamental* principle in the client-lawyer relationship is that the lawyer *maintain confidentiality* of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." (Emphasis added).

The "Comment" goes on to compare the present Rules of Professional Conduct with the prior, perhaps less restrictive, Code of Professional Conduct. The "Comment" states:

"**Code Comparison.**—The principle of confidentiality is enlarged in several respects and narrowed in a few respects compared with the corresponding provisions of the Code.

The general principle is enlarged in the following respects: First, the confidentiality requirement applies to all information about a client 'relating to the representation.' Under the Code, DR 4-101, the requirement applies only to information governed by the attorney-client privilege and to information 'gained in' the professional relationship that 'the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.' Rule 1.6 thus imposes confidentiality on information relating to the representation even if it is acquired before or after the relationship existed. *It does not require the client to indicate information that is to be confidential, or permit the lawyer to speculate whether particular information might be embarrassing or detrimental.* Furthermore, this definition avoids the constricted definition of 'confidence' that appears in some decisions." (Emphasis added).

Further, the *Annotated Model Rules of Professional Conduct* (2d ed. 1992), published by the Center for Professional Responsibility of the American Bar Association, also seem to directly contradict the majority's construction that, under Rule 1.6, a lawyer may disclose information relating to a client as long as the disclosure does not impose a risk or potential for harm to the client's interests. The "Comment" states:

"Rule 1.6 encompasses the duty of loyalty required of a fiduciary and serves to protect the principal's privacy interests. The obligation extends to *all information* about a client acquired in the course of the representation, *whether or not disclosure would be embarrassing or detrimental."* (Emphasis added).

*Id.* at 91 (citing *Restatement (Second) of Agency* §§ 395–96, at 219–22 (1957)).

The lawyer's obligation of confidentiality under Rule 1.6 is not absolute or unduly burdensome. For example, the attorney does not breach the Rule when discussing aspects

of a client's case as long as the client's anonymity is protected. As Professors Hazard and Hodes note:

"In functional terms, the line between permissible and impermissible disclosure should probably be drawn at the point of anonymity: a lawyer may talk shop if she is virtually certain that the listeners could not ascertain the identity of the client or the situation involved. This approach can be harmonized with the strict language of Rule 1.6(a), for it may plausibly be said that when a lawyer discusses a case in strictly hypothetical or abstract terms, she is not disclosing 'information' relating to a real 'client.' To honor the rule of confidentiality, however, and to maintain its strength, lawyers should exercise self-restraint and resolve marginal cases in favor of non-disclosure. If there is danger that the listeners may know any of the characters in the anecdote, the lawyer should maintain silence."

G. Hazard, Jr. & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.6:202, at 160 (2d ed. 1992).

The existing exceptions to the rule of confidentiality are adequate. Rule 1.6(b)(1) & (2) permits disclosures to prevent or rectify the client's criminal acts or fraud. Rule 1.6(b)(3) allows disclosure to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client. When an attorney is summoned as a witness to give relevant information, then pursuant to Rule 1.6(b)(4) the broad rule of confidentiality yields to the right of the tribunal to obtain relevant information, subject only to the narrower attorney-client and work product privileges. Similarly, when a statute or rule compels a disclosure, only the narrow attorney-client privilege is applicable. In addition to Rule 1.6's explicit exceptions, if a lawyer feels the need to disclose additional information which may be confidential under the Rule, the lawyer can always consult with the client and secure a waiver of confidentiality. In light of these existing exceptions, I see no basis for, and no reason for, the majority's holding, which effectively creates a new

exception to Rule 1.6 and authorizes free disclosure of all information relating to a client which does not have a risk or potential for harm to a client's interests.

The majority uses Professor Charles W. Wolfram's treatise, *Modern Legal Ethics* § 6.7.3, at 301 (1986), as the source for its interpretation of Rule 1.6, stating that "we find Wolfram's analysis to be sound." 330 Md. at 608, 625 A.2d at 947. Even Professor Wolfram acknowledges, however, that Rule 1.6(a) "if read literally, goes much farther and prohibits a lawyer from revealing all client information, . . ." subject only to the exceptions provided in the rule." Wolfram, § 6.7.3, at 301. Yet Professor Wolfram advocates not reading Rule 1.6 literally, thus ignoring the simple and straightforward language of the Rule. He states:

"The only imaginable reason for such a universal prohibition is to provide prophylactic protection against lawyer misjudgments about which revelations are potentially harmful to a client's interests. Yet it is hardly imaginable that MR 1.6 should be read literally to prohibit a lawyer from revealing absolutely any information about a client except in the limited exceptions explicitly provided in the rule." (Footnote omitted)

*Id.*

In acknowledging that it is not going to follow the literal language of Rule 1.6, the Court damages not only a fundamental aspect of lawyer-client confidentiality, but also a fundamental view about the nature of this Court's rules. This Court has often described the rules of procedure it adopts as "precise rubrics." *Parren v. State,* 309 Md. 260, 280, 523 A.2d 597, 606 (1987); *King v. State Roads Comm'n,* 284 Md. 368, 371–72, 396 A.2d 267, 269 (1979); *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346, 278 A.2d 71, 73 (1971); *Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128, 130 (1960). Under the Court's holding, that is certainly not an apt description of its ethical rules. If the Court is not going to follow the literal language of Rule 1.6, that rule cannot be very precise. If the Court is going to

imply an unwritten exception to the seemingly absolute rule of confidentiality, that rule is not a rubric. I am troubled by a dichotomy where our procedural rules are precise rubrics to be complied with literally, but our ethical rules need not always be followed literally because they may contain broad unwritten exceptions to seemingly absolute prohibitions. All of this Court's rules ought to be read and applied literally. When construing any rule, we should give deference to the literal language of the rule.

Even if the Court was not obligated to apply its unambiguous rules literally, there is no good reason why the Court should ignore the literal language of Rule 1.6. Certainly, there is nothing in the "legislative history," as evidenced by the previously discussed "Comment," that would justify the Court implying an exception to the literal language of the rule. Professor Wolfram's analysis, which the Court cites and finds to be "sound," is an inadequate basis for ignoring the literal language of the "precise rubric" known as Rule 1.6. The crux of Wolfram's rationale for rejecting a strict reading of the Rule is that

"to prohibit innocuous talk about a client would be senseless, would create morbid secretiveness among overscrupulous lawyers, and, by trivializing it, would detract from the soundness of the confidentiality principle."

330 Md. at 607–08, 625 A.2d at 947 (quoting Wolfram, § 6.7.3, at 301). In my opinion, prohibiting innocuous talk would not be senseless, would not create morbid secretiveness, and would not trivialize or detract from the soundness of the confidentiality of attorneys, psychiatrists, clergy, or any other professionals with obligations of confidentiality.

For these reasons, I do not believe this Court should ignore the literal terms of Rule 1.6 and create a new exception that does not exist in the language of, or the policy behind, the rule of lawyer-client confidentiality. The strict rule of confidentiality with its enumerated exceptions is appropriate and not at all unreasonable. If the lawyer feels a need to make additional disclosures beyond those

provided for in the Rule, it is not too burdensome to require the lawyer to consult the client and obtain the client's consent.

The majority's new test for lawyer-client confidentiality is that "[t]here must be the potential for some harm to the client's interest before an attorney will be considered to have violated the prohibition of MR 1.6(a) and to be subject to discipline, for having revealed 'information relating to representation of a client.'" *Id.* at 608, 625 A.2d at 947. This new confidentiality standard adopted by the majority may look disarmingly simple on the surface, but it portends interpretive problems. Let me suggest just a few. First, how much of a possible risk or potential for harm to the client must there be? I assume there must be less than a reasonable probability, but how much less? The Court must realize that the disclosure to the media sought in the instant case, like virtually any disclosure, presents at least a remote degree of risk or potential for harm to Thanos's interests. Is a slight speculative risk enough? Second, is the confidentiality test to be applied subjectively, based on the belief of the disclosing attorney, or objectively, based on what a reasonable attorney would believe to represent a risk or potential for harm to the client? Third, is "risk or potential for harm to the client's interests" an absolute standard or is it relative and weighed against the reason for disclosure or the recipient of the disclosure? This is of particular concern in the instant case because under the MPIA, the media, any citizen, the crime victim, and the prosecutor, all are "persons" equally entitled to inspect any public record, yet the majority seems to indicate that the identity of the person seeking the information has a bearing on its confidentiality. The majority states whether there is disclosure under the MPIA depends on whether "there is a risk or potential for harm to the client's interests," which "turns on the facts and circumstances of the particular case." 330 Md. at 609, 625 A.2d at 947. Should the identity of the member of the public seeking public information under the MPIA be a factor in applying the MPIA? Cer-

tainly it is a factor in determining the risk or potential for harm to the client's interests. Is the media less entitled to public information because it will broadly disseminate that information, and, thus, conceivably pose a greater risk of harm to Thanos's interests than would disclosure to some other members of the public? These are just some of the problems raised by the majority's new construction of Rule 1.6 and its holding that confidentiality only exists if the Public Defender can show some risk or potential for harm to Thanos's interests.

The ramifications of this Court's holding could well be that lawyers may now freely gossip about their clients at cocktail parties and entertain dinner companions with amusing stories about their clients, identifying the clients by name, as long as they believe their anecdotes have no risk or potential for harm to their clients' interests. Also, in covering high-publicity cases, newspapers may now be able to get non-privileged information from public defender files (but not from private attorneys who are not subject to the MPIA) unless the public defenders can demonstrate the information will have a risk or potential for harm to their clients' interests. As a result of this Court's decision, public defenders will find themselves caught in a real predicament. They might readily accede to MPIA requests for information about clients, a policy that no doubt runs counter to any attorney's healthy reluctance to freely furnish information about clients. They would thereby at least avoid the paradox, as in the instant case, of having the Attorney General represent the Public Defender in a civil proceeding where the Public Defender is attempting to safeguard the confidentiality interests of a criminal defendant. Alternatively, the Public Defender can err on the side of caution and deny all requests unless they are sure there is no risk or potential for harm to the client. The latter course of conduct imposes some additional financial risks, since the Public Defender may be liable for attorney's fees under the MPIA for improperly withholding information.

The "Comment" to Rule 1.6 in the Maryland Rules of Professional Conduct, adopted by this Court, provides that "[a] fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation." I fear the consequence of the majority's weakening of the attorney's obligation of confidentiality may be a substantial undermining of the attorney-client relationship, as well as the further erosion of the respect and esteem accorded attorneys by their clients and the public.

ELDRIDGE and ROBERT M. BELL, JJ., have authorized me to state that they join in the views expressed in this concurring and dissenting opinion.